## STATE v. DAWKINS.

1. It is necessary to a conviction for burglary, that it should be charged and proved that the offence was committed in the night time of some day, but it is not necessary to allege the precise day correctly, provided the day named was anterior to the finding of the bill of indictment.
2. The trial judge having given to the jury correct principles of law applicable to the particular facts testified to in a case of burglary, he did not err in declining to tell the jury in general terms what was the legal definition of this crime.
3. If the jury find a prisoner guilty of burglary, "when there was an entire failure of proof that there was a breaking," his only remedy is a motion before the Circuit Judge for a new trial. In this case there was some testimony tending to show a breaking.
4. A mere narrative of the facts testified to by witnesses is not a charge on the facts within the meaning of the constitutional inhibition.
5. Defendants being charged in one count with burglary, and in another count with larceny, and being convicted of burglary, errors, if any, of the charge as to the offence of larceny are immaterial, and therefore not a ground for new trial.
6. After the verdict has been published and the jury have separated, it is error to reassemble them, even though the purpose be to benefit the prisoner by suggesting the right to recommend to mercy, and thereby, under the statute, reduce the punishment. And a second verdict with such a recommendation is a nullity.
7. Assuming that the sentence was based upon the second verdict and not upon the first, the judgment must be reversed and a new trial granted.

2 -32

Before PRESSLEY, J., Edgefield, August, 1889.

This was an indictment against William Dawkins and William Davis *alias* Bulger Davis for burglary. The prosecutor testified that on the night of June 21, 1889, he locked his front door, fastened down the windows with a catch, and latched the back door, which might be opened from the outside by turning this latch. During that night, he heard some one walking in the house, and on the following Monday evening, which was the next time that he went to his safe, he found the money missing.

The judge charged the jury as follows :

The first inquiry is, was there burglary ? What is the proof on that point ? The proof is, this money was counted and put in the safe on Wednesday, and it was not missed until next Tuesday morning. If stolen, then it was during that time it was stolen. The proof which follows—that is, Mr. Jones, the elder, says that on Friday night after he had locked up the house, the front door bolted, windows shut, back door closed in the usual way, and gone to bed—that during the night, of Friday night, he heard some one walking in the house. That is all he knows now on the question of any person being in the house in the night time. That is what he says.

The next day, Saturday, is the day these persons were found spending the money ; Mr. Cheatham says Friday or Saturday ; Mr. Holstein says it was Saturday that money was spent at his store ; Mr. Cobb says they spent money at his store on that day. That you will connect with Mr. Jones's testimony. He says that he heard walking in his house Friday night, and these three witnesses testify that next day these two parties were together spending money in those stores. Mr. Cheatham does not state that they were together when in his store, but Mr. Cobb and Mr. Holstein say they were together when they spent money in the store of Holstein, because, he says, when Bulger bought a pair of shoes, Dawkins took out a $5 bill and paid for them, and bought an umbrella there. That was Saturday that they were spending this money at Cobb's and Holstein's, and Mr. Cheatham says it was Friday or Saturday that they spent money at his store. Does he, or not, satisfy you that Friday night was the time the money was

stolen ?   If you have any doubt about the matter, you will say "no"; but if the circumstances altogether satisfy you beyond a reasonable doubt that such was the case, why, then, you say "yes." It is entirely a question of fact for you.

Are both guilty ?   The rule is, that if property be stolen, and very soon after the theft it be found in possession of another person or other persons, he, she, or they are presumed to be the thieves, unless they give a reasonable, satisfactory account as to how they came by it.   Bulger has not attempted to give any account whatever in this case how he came by the $91 that was found in his mother's house.   He has attempted to give no account as to that.   $91 was found there, hidden under a brick of the hearth.   When Dawkins is questioned about it—when he was arrested and questioned about it—witnesses say he first denied knowing anything about it; that subsequently he changed that and said yes, he had $90 in an iron safe at the place where he said it was.   Well, now, you will observe that the amount is near about equal.   Bulger had $91 hidden at his house, and Dawkins had $90 in his safe at the place he put it.   You will weigh that fact in considering the question, how they were concerned together in the matter.   You will give it its proper consideration—$91 one had and $90 the other had; and that at Mr. Cobb's store and Mr. Holstein's store they were spending money together.

But Dawkins says that it was Friday night that Bulger came to him after he came from the fishing; that Bulger came to him and told him he had made a raise, and he testifies to that on the stand, that it was on Friday night.   Of course, that testimony is before you, and you will weigh that testimony in considering whether Friday night, the time fixed by Mr. Jones, is the time when the house was entered and the money stolen.   He fixes Friday night as the time when Bulger told him he had made a raise.   Well, Bulger, according to his account, kept all the money that night.   Next morning $90 is left with him.   A certain amount is spent that day, and $91 is found at Bulger's house. Now, he says Bulger gave him that money to keep for him.   Well, that is competent testimony, which is before you.   The question is, do you believe it ?   That is a question for you.   You are to consider it in view of all the circumstances of the case—in view

of the circumstance that he first denied knowing anything about it, and in view of the matters which it is your duty to weigh. Does it amount to a reasonable, satisfactory account in your mind as to how he came by that money? You will weigh the whole matter and answer that question to yourselves. I desire not to influence your opinion about it, but it is your duty to consider all the circumstances of the case, taking together his denial at first, the amount which each one had of the stolen money, and all the circumstances of the case. You will weigh, consider, why Bulger should have given him $90 to keep for him, and then have kept $90 himself, because, if he was afraid of being searched, the question is, wouldn't he have put all of it out of his way, if that was his object? Weigh all these circumstances.

Now, was there burglary? If the house was entered in the night time, on Friday, at the time Mr. Jones heard some one walking there, after he had shut the house up, then if you believe he shut it up as he said he did, if it was entered after that and the money taken that night, then it was burglary. If the parties acted together in the matter, they are both guilty. If you consider that both were not guilty in the matter of burglary, then if they acted together in disposing of the money after it was stolen, they are both guilty of larceny. Stealing money does not transfer the property. Any use of it made by another in connection with the thief after it is stolen, makes him as much the thief as if he had been concerned originally in the stealing of it. Every new disposition of stolen money is a new theft. That is the law of stealing.

Weigh the whole matter. Are they both guilty of burglary, or are neither guilty of burglary? If you have any reasonable doubt on the matter, you will say "not guilty." Has the defendant, Dawkins, given you a reasonable account how he came by this money? If he has, then he is not guilty; but if you are not satisfied of the account which he gives, in view of the circumstances of the case—if the circumstances of the case leave no reasonable doubt on your mind that he had part in the matter, then he is as guilty as the other. Bulger is found in possession of $91, which he does not pretend to account for. Just weigh the whole matter, and if you believe they are guilty of burglary and stealing, say

"guilty" generally; if you find they are not guilty of burglary, then you will say not guilty as to the first count, guilty as to second. If you have doubt about the guilt of either or both on the second count, you will say not guilty as to which one; but if you think both guilty, you will say guilty on the second count.

Maj. Ernest Gary: Did your honor charge as to breaking—what constitutes burglary?

The Court: I have simply said that if the house was entered that night after the time when Mr. Jones says he shut it up in the manner he did; then if they believe he did so shut it up in the usual manner, with the usual fastenings and all closed, then the entry of the house was burglary.

Maj. Gary: The jury is not in possession of the definition of what constitutes burglary.

The Court: I don't intend to define burglary.

Maj. Gary: I shall ask your honor, in the shape of a written request, to give them the definition of burglary.

The Court (to the jury): Burglary can only be committed in the night time. As far as the purpose of this case is concerned, if they entered that house when any portion of it was open, though in the night time, it was not burglary; but if they entered it after it was shut up in the usual manner, by opening a window that shuts by its own weight that overcame the fastening—if the house was so fastened and they opened any part and entered, that was burglary. That is enough for the purpose of this case. If that was done, that is burglary. I never confuse a jury by any general definition of law. I usually say to them, if you come to the conclusion that so and so are the facts of the case, then so and so is the law. And that is the charge I now give you. If that house was fastened up, as Mr. Jones testified he fastened it; if, then, it was entered after that time in the night time, that constitutes burglary. Whether they entered down a chimney or by opening a window, or any other way, it is burglary.

Jury brought in a verdict: "We find both the defendants guilty." They then dispersed, and court adjourned until next morning (August 7), at half past 9. On reassembling of court August 7, Judge Pressley caused the jury, who had had charge of

the case of *The State* v. *Dawkins and Davis* the evening previous, to be re-empanelled, and had the prisoners, Dawkins and Davis, confront them. He then addressed the jury as follows:

"*Gentlemen of the jury:* I wanted you to see them. You see their size and age. (To the sheriff: Take them back now.) [Prisoners placed back in the dock.] Gentlemen, there is a matter which I did not call your attention to last night, because of the confusion arising when your verdict came in. I forgot, in the confusion, to say that the law says, persons convicted of burglary at common law, burglary of a dwelling house, shall suffer imprisonment the whole term of their natural lives, and it shall be the duty of the judge to call attention to that matter, and let the jury say whether they recommend them to mercy or not. If the jury recommend them to mercy, then I have the power to fix the imprisonment for a term less than their whole life. You see their age, and you know the circumstances of the case. You will retire now. Give the jury the indictment. You will retire and say whether you recommend them to mercy or not."

Jury retired and returned with a verdict which read: "We find both defendants guilty, and recommend to mercy."

January 7, 1890. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This case was submitted without argument on either side, and the record consists only of the testimony, the charge of the Circuit Judge, and the grounds of appeal, together with a brief statement of what occurred in the court below after the verdict was first rendered; but what sentence was passed upon the defendants nowhere appears. We are, therefore, left to conjecture whether the accused were sentenced to imprisonment in the penitentiary, with hard labor, during their whole lives, as originally provided by the act of 1878, now incorporated in the General Statutes as section 2481, or whether their punishment was reduced, as provided for by the amendment to that section by the act of 1883, 18 Stat., 290. Under these circumstances, we might well decline to hear this appeal, and, but for the gravity of the case, would probably do so. We will, however, proceed to consider the case as well as we can upon such materials as have been furnished to us.

It may be gathered from the testimony set out in the record, that these defendants were charged with burglariously entering a house used as a hotel, in which the prosecutors resided, and stealing therefrom a considerable sum of money; and we infer from some remarks made by the judge, in his charge to the jury, that the indictment contained two counts—the first for burglary and the second for grand larceny simply. We may also infer that the time laid in the indictment was the 19th of June, 1889, while the testimony pointed to the 21st of June of the same year as the date on which the offence was committed. The jury rendered a general verdict in these words: "We find both the defendants guilty," and the jury were thereupon discharged for that day, and the court adjourned until the next morning. On the next morning, when the court reconvened, the judge directed the same jury which had rendered the verdict to be re-empanelled, and had the defendants brought before them, and their attention was called to the size and age of the defendants. The judge then stated to the jury that he had omitted, in charging them in this case, to call their attention to the amendment of the previous statute on the subject, whereby they might, by a recommendation to mercy, cause the punishment of the offence of burglary to be reduced from imprisonment for life to a less term, and the jury were directed to retire and say whether they would recommend the defendants to the mercy of the court or not. The jury then retired, and returned with a verdict in these words: "We find both defendants guilty, and recommend to mercy."

The defendant, Wm. Dawkins, alone appeals upon the grounds set out in the record.

The first ground imputes error in admitting testimony tending to show that a burglary was committed on the 21st day of June, the indictment charging that the offence was committed on the 19th of June. The rule is well settled, that it is in no case necessary to prove the precise day or even year laid in the indictment, except where time enters into the nature of the offence, but, on the contrary, any day previous to the finding of the bill may be proved instead of the day alleged in the indictment. 1 *Chit. Cr. Law*, 224; *State* v. *Anderson*, 3 Rich., 176; *State* v. *Porter*, 10 *Id.*, 148. Now, while it is necessary, in an indictment for bur-

glary, both to allege and prove that the offence was committed in the night time of *some* day, yet the precise day is wholly immaterial, provided it is anterior to the finding of the bill of indictment.

The second and sixth grounds of appeal impute error to the Circuit Judge in failing to define the crime of burglary, and in instructing the jury, that "if the house was entered in the night time, on Friday night, at the time Mr. Jones heard some one walking there, then if you believe he shut it up as he said he did, if it was entered after that, and the money taken that night, then it was·burglary." It is true that the Circuit Judge, when counsel called his attention to the fact that he had given the jury no definition of burglary, did say, "I don't intend to define burglary," but he immediately proceeded to explain to the jury that if they believed certain facts which had been testified to in this case, such facts would constitute burglary, at the same time informing them that even if the house was entered in the night time, when any portion of it was open, it was not burglary. While, therefore, he did decline to define, in general terms, the offence of burglary, he did lay down correct. principles of law applicable to the particular facts testified to in the case, which was doubtless much better calculated to enable the jury to reach an intelligent conclusion, than if he had laid down a general definition of the offence charged, without reference to the particular facts and circumstances testified to in the case. We do not understand that (in the language of the Chief Justice in *State* v. *Dodson*, 16 S. C., 463) "a judge is bound to lay before the jury *all* the law which might, under *any* circumstances, apply to the offence charged, but only such principles as are applicable to the case as made by the evidence." When this is done, the jury are in much better condition to apply such principles to the facts found by them than if they were merely furnished with general definitions.

The fifth ground charges error on the part of the Circuit Judge in overruling the motion in arrest of judgment, "when there was an entire failure of proof that there was a breaking." Even if we are at liberty to assume that any such motion was made or refused, in the absence of any intimation to that effect in the "Case," yet, as it seems to us, the remedy would have been by a

motion for a new trial, and not by motion in arrest of judgment. But waiving this, there was testimony tending to show that there was such a breaking as would be sufficient to constitute that element in burglary, and we cannot, therefore, say that there was a "failure of proof" as to this point.

The third and fourth grounds allege error on the part of the Circuit Judge in commenting on the facts, the only specification being that he stated to the jury that "the next day is the day these persons were found spending the money." It seems from the testimony, that the first circumstance which caused these defendants to be suspected was the fact that they were seen together in some of the stores in the town of Edgefield spending money in such amounts as attracted attention, the day after the house was supposed to have been entered. The Circuit Judge, in stating this testimony to the jury, used the language quoted above, and in the connection in which it was used we can hardly suppose that it would have the effect of conveying any intimation of the judge's opinion or even impression as to the guilt of these parties, but was a mere narrative of what the witnesses had stated. We are unable to find anything in the charge which is in violation of the constitutional provision in respect to the power of the judge to charge juries with respect to matters of fact.

The seventh and eighth grounds, relating exclusively to alleged errors in charging the jury in respect to the offence of larceny, even if well founded as abstract propositions, can have no application to the present case in which the defendants have been convicted of burglary and not of larceny simply. If, as we have seen, no error has been committed in laying down the law as to the offence of which the defendants have been convicted, it matters not what errors may have been committed in laying down the law applicable to an offence of which they have not been convicted. We are confined to a consideration of the question, whether there are any errors of law in the judgment appealed from, and as, under the general verdict found by the jury, that judgment must be regarded simply as a judgment pronounced for the offence of burglary, our investigation must be confined to the inquiry, whether there was any error in laying down the law applicable to that offence.

The ninth and tenth grounds of appeal question the legality of the course pursued in the court below after the verdict had been rendered and the jury discharged from the case, by re-empanelling them the next day for the purpose of giving them instructions, inadvertently omitted before, as to their power to recommend to mercy, and the effect of such recommendation. We do not know of any authority for such a proceeding, and none has been cited. While we have no doubt whatever that the course pursued in this instance was prompted by the best motives, and was really designed to give the defendants the benefit of a merciful provision of the law, yet we feel bound to regard it as a dangerous innovation upon well settled legal principles, and one which is not sanctioned by any law. After a jury have rendered their verdict and have been discharged, we know of no authority by which they can be re-empanelled, and, under further instructions, be called upon to render a new and different verdict. Such a power once recognized, even in a case like this, where its exercise was doubtless intended in favor of liberty, would afford a precedent which might lead to the most dangerous consequences. But without pursuing this line of remark, it is quite sufficient for us to say that it is without authority of law. We must, therefore, regard the second so-called verdict as an absolute nullity, and the judgment, which we must assume was rendered upon it, as without legal foundation, and should for that reason be set aside.

It may be said, however, that the first and only real verdict in the case would be sufficient to support the judgment. But it must be remembered, that by the express terms of the statute (*Gen. Stat.*, § 2481), the only judgment which would be legally rendered on that verdict would be imprisonment in the penitentiary with hard labor for life, and any other judgment would be erroneous and illegal; and if so, then our plain duty is to reverse it. Now, while the nature of the judgment rendered in this case does not distinctly appear in the record, yet we are bound to infer from what does there appear, that the judgment actually rendered was erroneous and illegal, for the act of 1883, amending the section of the General Statutes above referred to, expressly declares, that where a person is convicted of burglary at common law, and is recommended to the mercy of the court by the jury, the punish-

ment *shall* be reduced from that prescribed by that section of the General Statutes prior to the amendment. And as the manifest object of the Circuit Judge in re-empanelling the jury was to give these defendants the benefit of the reduction provided for, we are forced to the conclusion that the judgment rendered was based upon the second so-called verdict.

The judgment of this court is, that the judgment of the Circuit Court, so far as it concerns the appellant, William Dawkins, be reversed, and that the case be remanded to that court for a new trial as to said William Dawkins.