24268

The STATE, Respondent v. Irven Lee MYERS, Appellant.

(459 S.E. (2d) 304)

Supreme Court

*Daniel T. Stacey, Chief Atty., S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Norman Mark Rapoport,* Columbia, and *Sol. Holman C. Gossett,* Spartanburg, *for respondent.*

Heard May 2, 1995.

Decided July 3, 1995.

WALLER, Justice:

This case began as a capital trial. Appellant, Myers, was convicted of murder and first-degree burglary; the sentencing jury recommended life imprisonment. The sole matter on appeal is whether the trial judge erred in recalling the sentencing jury, moments after it had been dismissed, to ascertain whether it had found the existence of aggravating circumstances. We affirm.

## FACTS

The jury returned with a unanimous recommendation of life imprisonment. When the solicitor asked the judge whether there were any aggravating circumstances, the Court replied that there were none and, at 10:55 a.m., dismissed the jury to the custody of the clerk, who was to pay them and give them instructions. On the way out of the courtroom, the jury advised the custodian that it had, in fact, found the existence of aggravating circumstances. An off-the-record discussion was held and, at 10:57, the jury was returned to the courtroom. At no time during the two-minute interval did the jury disperse or mingle with the public.

The Court then inquired whether he had been incorrect in assuming the jury had found no aggravating circumstances. The forewoman of the jury replied that the jury had indeed found the existence of aggravating circumstances but had not

written them down as they had not recommended a sentence of death. Over Myers' objection, the jury was sent out to list any aggravating circumstances it had found. The jury returned several minutes later, having found the existence of three aggravating circumstances. The judge then sentenced Myers to life imprisonment without possibility of parole for thirty years.[1]

## ISSUE

The sole issue is whether the court erred in recalling the jury.

## DISCUSSION

In *State v. Dawkins*, 32 S.C. 17, 10 S.E. 772 (1890), this Court reversed and remanded for a new trial where the trial court reimpaneled the jury, after discharge, for the purpose of instructing them of their power to recommend mercy. Myers asserts *Dawkins* mandates reversal in this case. We disagree.

Although *Dawkins* comports with the general rule that a jury may not be reassembled to amend its verdict after discharge, a number of courts permit the jury to be recalled if, for example, they are still in the courtroom, or, in certain limited circumstances, still under the court's control. 23A C.J.S. *Criminal Law* § 1414 (1989); 75B Am. Jur. (2d) *Trial* § 1896 (1992). Notwithstanding a "formal discharge," several courts recognize that the jury may be reassembled so long as it remains an essentially undispersed unit, and has not been subjected to any outside influence in between the "discharge" and the reassembly. *See generally Annotation* 14 ALR (5th) 89 §§ 5, 6, 7, 9 (1993); *Webber v. State*, 652 S.W. (2d) 781 (Tex. 1983); *Masters v. State*, 344 So. (2d) 616 (Fla. 1977). The Fourth Circuit Court of Appeals has stated,

> It is not so much what is said in passing as what is actually done and acted upon that determines the question of discharge. Without specific announcement, a jury may tacitly be permitted to retire and mingle with the bystanders after rendering its verdict, and thereby become irrevocably discharged. On the other hand, it may remain

---

[1] Without the aggravating circumstances, Myers' parole eligibility is **twenty** years. S.C. Code Ann. § 16-3-20(C) (Supp. 1993).

undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has been impaneled is still under discussion by the court, without the intervention of any other business.

*Summers v. United States*, 11 F. (2d) 583, 586 (1926).

We concur with the reasoning of *Summers*. Moreover, we find the facts of *Dawkins* clearly distinguishable.

Here, at the time of the court's "discharge," the jury was dismissed to the custody of the clerk who was to give them further instructions before their release. It remained an essentially undispersed unit, and was subjected to no outside influence during the two-minute interval between discharge and reassembly.

In *Dawkins*, on the he other hand, the jury not only dispersed, but had been discharged overnight, clearly presenting the opportunity for discussion of the case with others. Additionally, the *Dawkins* jury was given a **new** option as to sentencing possibilities, i.e., it was advised of the option of recommending the defendants to mercy.[2] The jury here was given no **new** information nor was it required to make additional findings. On the contrary, the forewoman advised the Court that the jury had, in fact, found the existence of aggravating circumstances prior to being "discharged" but had failed to write them down. Accordingly, reassembly in this case served not to amend or alter the jury's verdict, but to reflect the actual verdict reached.

Under the limited factual circumstances presented, we find no abuse of discretion in recalling the jury to permit it to accurately report its true verdict.

Affirmed.

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.

---

[2] After further deliberation, the *Dawkins* jury did in fact recommend the defendants to mercy.