The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David MONTANEZ, Defendant–Appellant.

No. 94CA0953.

Colorado Court of Appeals, Div. I.

Oct. 10, 1996.

As Modified on Denial of Rehearing Jan. 23, 1997.*

Certiorari Granted Oct. 20, 1997.

* Sternberg, C.J., would GRANT petition of Defen- dant–Appellant.

each of which consisted of a group of six photographs of men who roughly matched the victims' description of the person who had robbed them.

After viewing the first set of photographs, each of the victims stated that one of the photographed persons resembled the robber. In the second photographic array, the victims did not recognize any of the persons pictured. Defendant's photograph was not included in either array.

In October 1992, the victims were shown the third photographic lineup, which contained defendant's picture. After certain events more fully described below, one victim identified defendant's photograph as being most likely that of the robber.

At defendant's preliminary hearing, that victim again identified defendant as the person who had robbed him and his family.

At trial, the jury found defendant guilty of two counts of first degree burglary and one count of aggravated robbery; however, it initially returned a verdict finding defendant not guilty on the crime of violence count. The court polled the jurors and each affirmed the verdict as his or her own. Thereafter, the trial court accepted the verdict, discharged the jury, and proceeded to discuss sentencing with counsel.

A few minutes later, as the sentencing discussions continued, the bailiff informed the court that some of the jurors had told her that they filled out one of the verdict forms wrong. The trial court then ordered the bailiff to bring the jurors back to the courtroom.

After the jury was reassembled the trial court polled the jurors again, over defense counsel's objection. This time, each juror stated that the "not guilty" finding on the crime of violence count was in error. Accordingly, the trial court ordered the jurors again to deliberate and to amend their findings as they saw fit. After a short period of deliberation, the jurors returned and announced that they had changed their finding on the crime of violence count from "not guilty" to "guilty." The trial court again polled the jurors and, finding unanimous

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Daniel J. O'Brien, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of first degree burglary, one count of crime of violence, and one count of aggravated robbery. We affirm.

In August 1992, a family was robbed at gunpoint in their home. During the two months following the robbery, each victim was shown three separate "photo lineups,"

agreement on each count, accepted the verdicts and discharged the jury.

## I.

■ Defendant contends that one victim's photographic array identification and his in-court identification were impermissibly suggestive, and that the trial court erred in refusing to suppress them. We disagree.

■ In considering a claim that the identification procedures used violated due process, the court must decide whether the resulting identification is reliable under the totality of the circumstances surrounding the confrontation. *People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976); *People v. Walker*, 666 P.2d 113 (Colo.1983).

Five factors should be considered: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the time which has elapsed between the crime and the confrontation." *People v. Walker, supra,* at 119.

Here, the trial court found that the victim "was in close contact. In other words, within the—the confines of the same room with the perpetrator of the crime for approximately 40 minutes out of the total time which exceeded an hour that the perpetrator was in the residence." And, the victim's opportunities to observe were much greater than those of the other two victims.

We view these findings as indicative of the court's determination that the first two factors of the test were supported by adequate evidence showing reliability.

As to the last three parts of the test, a brief chronology of events is necessary.

The robbery occurred on August 9 and 10, 1992. The victim described the perpetrator as "5′10″ to 6′, 160 to 180 pounds, Spanish–American male, light complexion, black hair slicked back and with a goatee and mustache." On August 19, the victim assisted a police sketch artist in preparing a composite drawing of the perpetrator.

On September 1 and 9, 1992, the victim was shown two photographic lineups. At the first lineup, the victim indicated that "there was a possible identification with photo number 3"; at the second lineup the victim did not select any photograph. Defendant's photograph was not included in either array.

Then, on October 21, the victim was shown a third photographic lineup. He stated that he "wasn't comfortable in picking anybody out." The detective put the array away and advised the victim that "at this time I felt we had someone in custody that had committed the crime to his residence and his family." The victim then asked if the person was in any of the photographs he'd been shown and the detective replied that he could not tell him that. The victim asked to see the lineup again and, after looking it over, said, "If it's any one of them it's photo number 2." That photograph was of the defendant.

The trial court made no specific finding regarding the accuracy of the victim's prior description of the perpetrator. However, we note that, based on this victim's description, 10 days after the crime a police sketch artist prepared a composite drawing which bears a resemblance to the lineup photograph of defendant. The discrepancy between the physical description given and the characteristics of defendant—5′10″ to 6′ and 150 to 160 pounds v. 5′7″ and 140 pounds—is not so great as to mandate a finding of inaccuracy.

The victim's level of certainty at the time of the confrontation, is less than positive, to be sure.

And, it is undisputed that the time elapsed between the crime and the final photographic lineup was approximately two and one-half months.

The trial court concluded that, because no improper police conduct had occurred, the photographic identification should not be suppressed. It noted: "It's very clear that there was nothing that was being motivated at this point in time by the police officer." This determination is supported by competent evidence in the record. Thus, the ruling will not be set aside on appeal. *Young v. People*, 175 Colo. 461, 488 P.2d 567 (1971).

The detective's comments at the third photographic lineup gave no indication to the victim that a particular photograph should be selected. His statement that the police had a suspect in jail gave no hint as to which, if any, of the persons in the photographs might be the suspect. Indeed, in our view, the detective properly declined to tell the victim whether the jailed suspect's photo was in the array.

■ Contrary to defendant's contention, the prosecution does not have a per se burden to show that in-court identification testimony is not the product of an unduly suggestive procedure. *People v. Monroe*, 925 P.2d 767 (Colo.1996). The trial court's finding, weighing the totality of circumstances in light of the factors in *People v. Walker, supra*, is well supported and will not be disturbed. Therefore, we find no error in the trial court's conclusion that the victim's in-court identification of defendant was proper and that defendant's objections go to the weight of this victim's identification, not to its admissibility. *People v. Thorpe*, 641 P.2d 935 (Colo.1982). As the United States Supreme Court noted in *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 155 (1977): "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

## II.

Defendant next contends that, because the two counts of first degree burglary were supported by identical evidence, the trial court erred in determining that the prosecution was not required to elect between them. We disagree.

Here, one count alleged that defendant was armed with a deadly weapon at the time of the burglary while the other alleged that he menaced the victims during the course of the burglary.

■ Section 18–1–408(3), C.R.S. (1986 Repl.Vol. 8B) requires that, if two or more charged offenses arise from the same criminal episode and are supported by identical evidence, the trial court is required to impose concurrent sentences. *People v. Tivis*, 727 P.2d 392 (Colo.App.1986).

Under § 18–4–202(1), C.R.S. (1986 Repl. Vol. 8B):

A person commits first degree burglary if he knowingly enters or remains unlawfully in a building or occupied structure with intent to commit therein a crime . . . and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, he . . . menaces any person, or . . . is armed with . . . a deadly weapon.

■ Menacing consists of the knowing use of threats or physical action to place or attempt to place another person in fear of imminent serious bodily injury. *See* § 18–3–206, C.R.S. (1986 Repl.Vol. 8B). "However, there is no requirement in [the first degree burglary statute] that a victim be placed in fear of imminent serious bodily injury by a deadly weapon. . . ." *People v. Sisneros*, 44 Colo.App. 65, 67, 606 P.2d 1317, 1318–19 (1980). Thus, each of the two counts of first degree burglary here consisted of different elements which were proved by evidence of different conduct.

Moreover, we note there were multiple victims in this case, further supporting the charging of defendant on separate counts of first degree burglary.

Finally, even if we were to conclude that the two counts were supported by identical evidence, defendant received concurrent sentences. Thus, the requirements of § 18–1–408(3) were met. *See People v. DeBoer*, 829 P.2d 447 (Colo.App.1991).

## III.

Defendant next contends that the trial court erred in recalling the jury to re-deliberate the crime of violence charge after it had previously returned a not guilty verdict on that charge. We disagree.

In *Kreiser v. People*, 199 Colo. 20, 604 P.2d 27 (1979), the trial court was informed, well after it discharged the jury, that there was

an error in one of the verdict forms. It then ordered the jurors brought back into the courtroom for further proceedings.

The trial court polled all of the jurors and, upon finding that the verdict form did not correctly reflect their verdict, instructed the jury foreman to alter the language of the verdict form to correct the error.

In reversing the judgment of the court of appeals which had affirmed the defendant's conviction under the amended verdict, our supreme court held that:

> [O]nce a jury has been discharged, and the members of the jury have dispersed, the court cannot reconstitute the jury and poll the individual jurors to determine their intent in rendering a verdict. . . .

*Kreiser v. People, supra,* 199 Colo. at 22, 604 P.2d at 28.

In its analysis, the *Kreiser* court noted that the general rule in criminal cases would have prevented the jury from being reconstituted after the jurors have dispersed, "leaving the courtroom and the control of the judge." *Kreiser v. People, supra,* 199 Colo. at 22, 604 P.2d at 29.

However, the *Kreiser* court did not apply this type of *per se* rule. Rather, the court noted that the basis of the general rule is that: "[O]nce the jurors have separated and departed from the courtroom and from the control of the judge, with the opportunity to mingle and discuss the case with others . . . the jury's functions are at an end." *Kreiser v. People, supra,* 199 Colo. at 23, 604 P.2d at 29. Applying a similar rationale, the court concluded:

> In the instant case . . . the judge had discharged the jury which then left the courtroom and separated, going their individual ways. On recall, nine of the jurors were found in the courthouse parking lot. The other three jurors had left the courthouse premises and were located at their respective homes. It is thus clear that the jurors had the opportunity of mingling with the public and discussing the case.

*Kreiser v. People, supra,* 199 Colo. at 23, 604 P.2d at 29.

In accordance with this view, it has been noted that:

> The mere announcement of the discharge of the jurors does not preclude recalling them if they have not yet dispersed and mingled with bystanders.

4 C. Torcia, *Wharton's Criminal Procedure* § 578 (12th ed.1976).

The *Kreiser* court did not find many of the factors relied on in other cases to be important in determining whether it was proper to reassemble a jury after it had been discharged.

First, the court did not distinguish between errors of form and errors of substance in a jury's original verdict as a basis for determining whether the verdict could be amended after the jury's discharge. *See* 4 C. Torcia, *supra,* § 578 (noting that, under one view, jurors could be recalled to amend their verdict when the defect was merely one of "form" but could not do so when it was a "matter of substance."). *But see Schoolfield v. Brunton,* 20 Colo. 139, 36 P. 1103 (1894)(stating that, because the trial court could have corrected an error in the verdict, it was not error to require that the jury be reassembled to correct the error).

Second, it implicitly declined to designate a specific threshold, such as the courtroom door, as the point beyond which jurors could not go, after being discharged, without losing their ability to act as jurors. *See Hayes v. State,* 44 Ala.App. 499, 214 So.2d 708 (1968)(holding that once jurors had left the presence of the court, and were no longer within its immediate control, they could not be recalled to amend verdict). *But cf. People v. Lopez,* 867 P.2d 52 (Colo.App.1993)(on the day after jury had rendered verdict in guilt phase of trial and had retired for the evening, the trial court erred in not permitting jurors to reconsider a verdict which was in doubt before proceeding with later phase of trial).

Finally, it did not find particular importance in the fact that the jurors were separated from each other during the period between discharge and reassembly. *See Webber v. State,* 652 S.W.2d 781 (Tex.Crim. App.1983); *see generally Anderson v. State,* 231 Miss. 352, 95 So.2d 465 (1957); *cf. People v. Davis,* 183 Colo. 228, 516 P.2d 120

(1973). *But see People v. Hernandez*, 163 Cal.App.3d 645, 209 Cal.Rptr. 809 (1985).

Instead, in applying the relevant legal principles, the *Kreiser* court focused on the jurors' opportunity to discuss the case with non-jurors after being discharged. And, despite the lack of evidence that the jurors in that case had engaged in such discussions, the court nevertheless determined that, under those circumstances, it was unclear that the jurors had had the "clear" opportunity to discuss the case with others. Some jurors had gone home, where friends and family members naturally would have been expected to inquire about the case. *See Kreiser v. People, supra.*

Here, the jurors were out of the presence of the court for only a few minutes. Ten of them had remained with the bailiff. Of the two who had left the group, one was found in the courthouse and the other had just walked out of the courthouse.

Nothing in the record supports an inference that these jurors had a clear opportunity to speak about the case with each other or with anyone else before being called back into the courtroom.

Moreover, the record shows that the guilty verdict language and signature block on the verdict form in question were opposite from those on the other three verdict forms. Thus, the error could well be characterized as an inadvertent one of a clerical nature.

■ Because the facts here were not sufficient to support a presumption that the jury was open to the influence of others after discharge, the burden was on defendant to show that the jurors had actually communicated with others or were influenced to change their verdict by their contact with others. *See Masters v. State*, 344 So.2d 616 (Fla.App.1977); *see also Sierra Foods v. Williams*, 107 Nev. 574, 816 P.2d 466 (1991); *State v. Myers*, 318 S.C. 549, 459 S.E.2d 304 (1995).

■ However, defendant did not request that the jurors be questioned about their contact with others during the brief period after discharge. Thus, in these circumstances, we find no error in the trial court's decision to reassemble the jury for further deliberation and to enter judgment on the amended verdict. *See Masters v. State, supra; see also Kreiser v. People, supra; Commonwealth v. Brown*, 367 Mass. 24, 323 N.E.2d 902 (1975); *see generally* Annot., *Criminal Law: Propriety of Reassembling Jury to Amend, Correct, Clarify, or Otherwise Change Verdict After Jury has Been Discharged, or has Reached or Sealed Its Verdict and Separated*, 14 A.L.R.5th 89 at § 7 (1993).

## IV.

In light of this disposition, defendant's other contentions of error are moot, and we need not address them.

The judgment is affirmed.

DAVIDSON, J., concurs.

STERNBERG, C.J., dissents.

Chief Judge STERNBERG dissenting.

The majority upholds the action of the trial court in recalling a jury, ordering it to redeliberate, and then accepting a change of verdict from not guilty to guilty on a crime of violence charge. The majority also concludes that the identifications of the defendant, both by photographic array and in court, were not unduly suggestive. I disagree with both conclusions, and therefore, I respectfully dissent.

## I.

At the conclusion of the trial in this case, the jury returned verdicts of guilty to two counts of first degree burglary and to one count of aggravated robbery, but found that defendant had not committed a crime of violence. The jury was polled and each juror individually affirmed the verdicts. The court then discharged the jury, excused the members, and proceeded to discuss sentencing with counsel. During that discussion, a bailiff informed the court that one of the jurors had told her that one of the verdicts was incorrect. The court directed the bailiff to collect the jurors and bring them back to the courtroom.

The record reflects that ten of the jurors were still in the hall adjacent to but outside

of the courtroom; however, one juror was at a doorway leading out of the courthouse and another juror was "in the road area" outside the courthouse.

When the jurors were assembled, the court polled them again and all stated that the verdict on the crime of violence charge was in error. The court directed the jury to retire to the jury room and redeliberate. They tore up the first verdict form, returned to the courtroom, and presented a new verdict, finding defendant guilty on the crime of violence charge. The jury was again polled and again affirmed the verdict.

Generally, after a verdict has been rendered or received by a court in a criminal case, and the jury has been discharged and has dispersed, it may not thereafter be recalled to reconsider, amend, or correct its verdict. As stated in *Kreiser v. People*, 199 Colo. 20, 22, 604 P.2d 27, 29 (1979), the rationale for the rule is as follows:

> [O]nce the jurors have separated and departed from the courtroom and from the control of the judge, with the opportunity to mingle and discuss the case with others, *whether discussion be had or not,* the jury's functions are at an end. (emphasis added)

If the jury is no longer under the control of the court, the opportunity for contamination exists. *See State v. Myers,* 318 S.C. 549, 459 S.E.2d 304 (1995).

*Kreiser v. People* is in the mainstream of American jurisprudence on the issue. I am aware of no reported cases allowing a jury to reassemble after a verdict *valid on its face* is received, the jury is discharged, and jurors are beyond the control of the judge. *See generally Jury Reassembly—Criminal Cases* Annotation, 14 A.L.R.5th 89 (1993); 4 C. Torcia, *Wharton's Criminal Procedure* 309 (1992).

Applying the rule of the *Kreiser* case requires the conclusion that the trial court here erred in ordering or even permitting the jury to "redeliberate" and to change an unambiguous "not guilty" verdict to one of guilty to the crime of violence charge because there was an opportunity for at least one juror to become "contaminated" by mingling with others. Indeed, there was more reason to permit "correction" of the verdict in *Kreiser* than in this case. There, the critical part of a verdict form omitted the word "serious," affecting the degree of the assault there involved. Here, the difference is fundamental: the distinction between not guilty and guilty.

It is true that in *Kreiser* several of the jurors were far beyond the court's control, having actually arrived at their homes. However, the distance jurors travel from the courthouse is not significant; the test is whether the "opportunity to mingle and discuss the case with others, whether discussion be had or not, [exists]." *Kreiser v. People, supra,* 199 Colo. at 22, 604 P.2d at 29.

Here, all jurors had left the courtroom. One might argue, albeit with questionable persuasiveness, that the ten jurors in the hall adjacent to the courtroom remained under the control of the court. It cannot be said that these ten jurors had not mingled with other persons in the hallway. They had been discharged and were no longer under the constraint of their oath not to discuss the case with others.

In any event, it cannot be disputed that the juror who was about to leave the courthouse and especially the juror who was outside of the courthouse were beyond the control of the court and that the possibility of contamination existed. Thus, the trial court's reconstituting the jury for new deliberations was reversible error.

II.

I also disagree with the majority's conclusion that the photographic array identification and other derivative identification testimony were proper. In my view, they were unduly suggestive and should have been suppressed.

Late one night in early August 1992, a man with a gun robbed a house occupied by a woman, her adult son, and her adult daughter. Over the two-month period following the robbery, each of the victims separately was shown photographic arrays of suspects by the police on three different occasions. The first two photo arrays did not contain a

photograph of the defendant, but the third did.

After viewing the first array, all three victims identified one of the photos as possibly being the perpetrator. When shown the second array, none of the victims made an identification.

Thereafter, the police found a fingerprint in the victims' home which they identified as being defendant's, and in late October, the three victims were shown a third photographic lineup. Initially, none of them was able to make a positive identification, although the daughter indicated that the person depicted in photograph number one had similar features to the robber and the individual depicted in photograph number two had the same eyes as the perpetrator; nevertheless, she was not able to identify the person she thought was in her house. The son and daughter were both uncomfortable identifying anyone.

After the son failed to identify the robber, the investigator put the photographs away and told him that he felt the police "had someone in custody that had committed the crime." The witness asked the investigator if that person's photograph had been included in the lineup. The investigator told the victim that he could not comment; nevertheless, the investigator showed the photographic array to the victim again. The victim then stated, "If it's any one of them, it's photo number 2." Defendant's photograph was number two.

At the preliminary hearing, this witness identified defendant as the robber. At that time, the only people present in the courtroom were the judge, the attorneys, and defendant, who was dressed in an orange jail-issue jumpsuit. During the trial, the witness confirmed his identification of the defendant as the robber. The other two victims were permitted to identify the defendant, who was seated at counsel table in the courtroom, as the robber.

### A. The Photographic Array

Admission of evidence of an unnecessarily suggestive identification procedure violates due process of law unless the totality of circumstances establishes that the procedure did not result in a substantial likelihood of misidentification. *Alvarez v. People*, 653 P.2d 1127 (Colo.1982).

To determine the reliability of the identification, the corrupting effect of the suggestive identification procedure must be weighed against the five factors discussed in the majority's opinion: (1) the witness' opportunity to view the perpetrator, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description, (4) the witness' level of certainty at the time of the identification, and (5) the length of time between the crime and the identification. *People v. Walker*, 666 P.2d 113 (Colo.1983).

Here, although the first two prongs of the *Walker* test appear to have been met, there is considerable difficulty with the third, fourth, and fifth prongs thereof. As to the third prong, the physical description the witness gave the police differed from defendant's actual hair style, height, weight, and facial hair.

As to the fourth prong of the *Walker* analysis, at first the witness was unable to identify the defendant; only after being told the police now had a suspect did the witness identify him. Even then, the identification was expressed in uncertain terms.

It is true that the investigator did not tell the witness that the photograph of the suspect was included in the array. However, it would be disingenuous in the extreme to conclude that the witness was not aware that the photo array included a picture of the individual whose fingerprint the police had and who was a suspect. There would have been no logical reason to conduct another photographic lineup unless it contained the suspect's picture. Indeed, when the witness was cross-examined at trial on this issue, he conceded that "for the umpteenth time," he was not positive about anything before he was told of the fingerprint evidence.

Finally, regarding the fifth *Walker* prong, two and a half months had elapsed between the time of the crime and the third photographic array.

Under the totality of these circumstances, in my view, both the identification procedure

and the last photographic array were unduly suggestive and should have been suppressed.

### B. The In–Court Identification

Even if an unduly suggestive out-of-court identification is suppressed, a subsequent in-court identification may still be allowed if there is an independent source for the in-court identification. *See Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978). However, for the in-court identification to be admitted, the prosecutor must establish by clear and convincing evidence that the in-court identification was not the product of the previous unduly suggestive procedure, but rather was based on the witness' independent observations during the crime. *People v. Walker, supra.*

In evaluating the totality of the circumstances to determine whether an independent source for the in-court identification exists, a court should examine the same five factors which bear on the reliability of an identification. *Huguley v. People, supra.*

Here, the trial court conducted a hearing and found that an independent source for the identification existed based on the victim's opportunity to view the perpetrator at the time of the crime. However, the court did not recognize the inherently suggestive nature of the identification procedure which was, in essence, a one-on-one confrontation, *see People v. Walker, supra,* and did not address the other *Walker* factors relevant to reliability discussed above.

As noted above in the analysis of the photographic array procedure, there were significant differences between the defendant's appearance and the physical description of the perpetrator previously given by the witness. Also, many months had elapsed between the crime and the trial.

For these reasons, I would reverse the judgments of conviction and remand the cause for a new trial on the burglary and robbery charges.