The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Andrew J. OLSON, Defendant–Appellant.

No. 94CA1716.

Colorado Court of Appeals,
Div. V.

April 18, 1996.

Rehearing Denied June 27, 1996.

cause his driver's license was revoked in a civil proceeding under § 42–2–122.1, C.R.S. (1993 Repl.Vol. 17) for refusing to take a test for blood alcohol content pursuant to the Express Consent law, § 42–4–1301, C.R.S. (1995 Cum.Supp.).

At present, there are no Colorado appellate opinions addressing this question, although the supreme court currently has a similar issue before it in *Deutschendorf v. State of Colorado,* (Colo. No. 95SC531). Upon analysis of United States Supreme Court rulings and related law, we conclude that double jeopardy is not implicated by this process because an administrative driver's license revocation for failure to submit to a breath or blood alcohol test does not constitute "punishment" for the purposes of the Double Jeopardy Clause. Accordingly, we affirm.

### I.

■ Initially, we reject the People's argument that the record on appeal does not contain sufficient information regarding the administrative revocation of defendant's driver's license and is therefore inadequate to determine the double jeopardy issue.

■ C.A.R. 10 governs designation of the appellate record. The purpose of the rule is to ensure that an appellate court will be given sufficient information to arrive at a just and reasoned decision. *People in Interest of J.L.P.,* 870 P.2d 1252 (Colo.App.1994). The record need not be all-inclusive; rather, it will be deemed adequate if it contains sufficient information to enable the court to resolve the issues presented. *City of Aurora v. Webb,* 41 Colo.App. 11, 585 P.2d 288 (1978).

Here, the record contains testimony from a police officer indicating that defendant had refused to take a breath or blood alcohol test and this evidence is further confirmed by the arrest report. The record also contains a copy of defendant's driver history that documents the initial express consent license revocation and the later mandatory revocation, apparently after a hearing.

Accordingly, the record is adequate to determine that defendant's license was revoked

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, and Beverly Fulton, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David J. Akerson and Joseph Saint–Veltri, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Andrew J. Olson, appeals the judgment of conviction entered after he was found guilty of driving while his ability was impaired by consumption of alcohol (DWAI), speeding, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. Defendant's sole contention on appeal is that his conviction is barred by principles of double jeopardy be-

for failure to take a breath or blood alcohol test.

## II.

Next, the People assert that defendant has waived his double jeopardy argument because he failed to raise it in the trial court. We disagree.

■ Because the issue was not raised in the trial court, we apply a plain error standard of review. When plain error affecting substantial rights appears, an appellate court may address the error even though it is raised for the first time on appeal. Crim.P. 52(b).

■ In determining whether an issue involves plain error, we review the entire record to determine whether the asserted error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ Here, defendant asserts that his conviction was unconstitutionally obtained in violation of the Fifth Amendment and Colo. Const. art. II, § 18. Such an error would be cognizable on appeal as plain error. *See People v. Grant*, 40 Colo.App. 46, 571 P.2d 1111 (1977) (plain error test applied in resolving double jeopardy claim). Accordingly, we will address the merits of defendant's contention.

## III.

Defendant asserts that his criminal conviction is barred by principles of double jeopardy. We disagree.

■ The Double Jeopardy Clause of the Fifth Amendment protects against three distinct types of governmental action: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and imposition of multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). It is the third category that is at issue here.

■ In order to establish for double jeopardy purposes that multiple punishments are being imposed, a defendant must show that: (1) he or she is being subjected to separate proceedings; (2) the conduct precipitating the separate proceedings consisted of one offense; and (3) the penalties or sanctions in each of the proceedings may be considered "punishment." *See Luk v. Commonwealth*, 421 Mass. 415, 658 N.E.2d 664 (1995).

■ The dispositive portion of this test in the situation here is whether the sanctions in the administrative license suspension imposed under § 42–2–122.1, C.R.S. (1994 Repl. Vol. 17) may be considered to be "punishment."

In *United States v. Halper, supra*, the defendant had previously been convicted of federal criminal fraud and thereafter was found civilly liable to the United States for the submission of false claims under a statute providing for a civil penalty plus double the amount of damages sustained by the government. The defendant claimed that the proceedings were barred by the Double Jeopardy Clause.

The Court held that the characterization of a statute as civil or criminal was not dispositive of whether the penalty imposed thereby was "punishment." Rather, it stated that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, constitutes punishment. Thus, concluding that the Double Jeopardy Clause may apply in civil proceedings, the court held that whether double jeopardy bars a second proceeding requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. *See also Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (in forfeiture action contemporaneous with criminal drug charge, Court concluded that forfeiture constituted payment to a sovereign as "punishment" for an offense and, as such, was subject to the limitations of the Eighth Amendment's excessive fines clause).

In *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the defendants had used their family ranch to cultivate marijuana and

were criminally prosecuted and convicted for possessing or conspiring to sell the drug. The State of Montana thereafter filed suit to collect its state tax on illegal drugs.

The Court determined that the drug tax was "punishment" because its imposition was conditioned on commission of a crime, the taxation rate was extreme, the purpose of the statute was solely to deter, the tax was imposed only after the taxpayer had been arrested for the precise conduct that gave rise to the tax obligation in the first place, and the tax was levied on goods that the taxpayer neither owned nor possessed when the tax was imposed.

Relying upon these principles, defendant argues here that, because a license revocation for failure to take an alcohol test deters and punishes the driver, license revocation therefore is "punishment" for purposes of double jeopardy analysis. We reject this reasoning.

In *United States v. Halper, supra,* the Court noted that in determining whether the legislative purpose in enacting a statutory provision is remedial or punitive, a court must look to the purposes that the sanctions serve, rather than any resulting effect of the sanction upon a defendant. The *Halper* Court stated that "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'" *United States v. Halper, supra* (fn. 7). *See also State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 904 P.2d 1044 (1995) (rejecting argument that *Halper* stands for proposition that any administrative sanction which has a deterrent effect is punishment for double jeopardy purposes).

Here, § 42–2–122.1, C.R.S. (1993 Repl.Vol. 17) governs revocation of driver's licenses because of failure to submit to a breath or blood alcohol test. It provides, in pertinent part:

(1) The purposes of this section are:

(a) *To provide safety for all persons using the highways of this state* by quickly revoking the driver's license of any person who has shown himself to be a *safety hazard* by driving with an excessive amount of alcohol in his body and any person who has refused to submit to an analysis....

. . . .

(c) ... to prevent the relicensing of any person until the department is satisfied that his alcohol problem is under control and he *no longer constitutes a safety hazard to other highway users.* (emphasis added)

Thus, the sanction of revocation is intended to serve the remedial purpose of fostering the safety of the general public who use the highways of the state. *See Augustino v. Department of Revenue,* 193 Colo. 273, 565 P.2d 933 (1977) (purpose of mandatory revocation penalty is to encourage the voluntary taking of a blood alcohol test which assists in prosecution of drunken driver and the reduction of accidents, injuries, and deaths); *DeScala v. Motor Vehicle Division,* 667 P.2d 1360 (Colo.1983) (revocation is means by which implied consent statute encourages drivers to cooperate with enforcement of traffic safety by submitting to chemical testing); *Campbell v. Department of Revenue,* 176 Colo. 202, 491 P.2d 1385 (1971) (revocation of driver's license because of prior driving convictions is not intended as further punishment, but rather is designed solely for the protection of the public in the use of the highways and does not in the legal sense subject the licensee to double jeopardy or punishment); *Hess v. Tice,* 43 Colo.App. 47, 598 P.2d 536 (1979) (license revocation sanction is imposed to encourage the production of scientific evidence concerning the amount of alcohol in the bloodstream). *See also Cordova v. Mansheim,* 725 P.2d 1158 (Colo.App.1986) (revocation statute is remedial in nature and is to be liberally construed in the public interest).

■■■ Further, the operation of motor vehicles on public highways is an activity that is and always has been regulated by the government. There is no constitutionally guaranteed right to drive a vehicle. Rather, that activity may be regulated by the lawful exercise of the police power in the interest of the public health, safety, and welfare. *Campbell v. Department of Revenue, supra.* Revocation of a privilege voluntarily granted is char-

acteristically free of a punitive element. *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

Moreover, in other contexts, license revocation proceedings are recognized as public safety measures rather than punishment. *See People v. Marmon,* 903 P.2d 651 (Colo. 1995) (disciplinary sanction imposed on lawyer is intended for protection of public and, thus, is not punishment for double jeopardy purposes); *Loui v. Board of Medical Examiners,* 78 Hawaiì 21, 889 P.2d 705 (1995) (revocation of license to practice medicine is designed to protect public, not to punish the physician).

■ The fact that the license revocation statute plays a role in deterring misconduct does not defeat the remedial character of the statute. Non-punitive sanctions may legitimately include deterrent aspects. *See Department of Revenue v. Kurth Ranch, supra.* The deterrent effect of administrative license revocation is incidental to the government's purpose of protecting the public from licensees who are incompetent, dishonest, or otherwise dangerous. *State ex rel. Schwartz v. Kennedy, supra.*

Nevertheless, defendant contends that the statute does not satisfy three of the criteria set forth in *Department of Revenue v. Kurth Ranch, supra,* and, thus, must be characterized as punitive. We disagree with this argument.

Contrary to defendant's assertion that the license revocation is conditioned upon commission of the DWAI crime, the statute requires revocation of a license when a driver refuses to take or complete, or to cooperate in the completion of any test of blood, saliva, breath, or urine for purposes of determining alcohol level in the bloodstream. It does not require the commission, prosecution, or conviction of a crime as a condition to its operation. Indeed, the determination of facts surrounding the revocation is "independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect any revocation" under the statute. Section 42–2–122.1(1.5)(c), C.R.S. (1993 Repl.Vol. 17).

Defendant also contends that, because the license revocation was imposed only after his arrest, the statute must be considered punitive. Again, we disagree.

In *Department of Revenue v. Kurth Ranch, supra,* 511 U.S. at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 780 (1994), the Court stated that imposition of the tax there at issue not only hinged upon commission of a crime, but it was also "exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place."

Here, in contrast, the license revocation does not depend upon an arrest or a conviction. Rather, under the circumstances at issue, it is only because defendant refused to take the test that the revocation occurred. It is the failure or refusal of defendant to take the test that gives rise to the revocation here, not the level of alcohol in defendant's bloodstream. Consequently, defendant here was arrested for conduct different from the conduct giving rise to the license revocation, *i.e.,* driving a motor vehicle while his ability to do so was impaired by the consumption of alcohol, as opposed to a refusal to take the test.

Finally, defendant asserts that the subject activity is forbidden and, therefore, that the statute is punitive rather than remedial. We are not persuaded.

First, the activity that is being regulated is participation in the testing, not the driving of a motor vehicle after consumption of alcohol. Second, even if driving a motor vehicle after consumption of alcohol is being regulated, the statute does not forbid the activity in its entirety; rather, it governs the *excessive* use of alcohol that affects driving ability. *See* § 42–2–122.1(1)(a), C.R.S. (1993 Repl.Vol. 17). Furthermore, here, defendant's license was not revoked because of excessive alcohol consumption. It was revoked because he refused to take the test.

Accordingly, we reject defendant's reliance upon *Department of Revenue v. Kurth Ranch, supra.* In so ruling, we note that the vast majority of jurisdictions that have addressed double jeopardy challenges to similar

administrative license revocation proceedings have determined that revocation for failure to submit to an alcohol test is not punishment, but rather serves a remedial purpose. *See Luk v. Commonwealth, supra; State ex rel. Schwartz v. Kennedy, supra; State v. Zerkel,* 900 P.2d 744 (Alaska App.1995).

We are aware of only one appellate court case holding that such license revocation proceedings implicate double jeopardy, *see State v. Gustafson,* No. 94 C.A. 232, 1995 WL 387619 (Ohio Ct.App. June 27, 1995) *appeal allowed,* 73 Ohio St.3d 1427, 652 N.E.2d 800 (1995), while other intermediate appellate courts of that state have taken the opposite view. *See State v. Miller,* No. 2–94–32, 1995 WL 275770 (Ohio.Ct.App. May 12, 1995); *State v. Sims,* No. CA94–12–315, 1995 WL 493291 (Ohio.Ct.App. Aug.21, 1995).

Accordingly, we conclude that an administrative license revocation imposed because of a refusal to take an alcohol test constitutes a remedial sanction as opposed to punishment. Therefore, such a revocation cannot violate the Double Jeopardy Clause's prohibition against multiple punishments and there is no federal constitutional defect in the judgment of conviction.

In addition, while defendant cites the Colorado constitutional provision prohibiting double jeopardy, Colo. Const. art. II, § 18, he has presented no separate argument or analysis predicated upon that provision. We thus do not consider whether the Colorado constitution provides greater protection than the federal constitution.

Furthermore, because defendant has presented no argument demonstrating how his conviction for all offenses besides the DWAI violation could conceivably implicate double jeopardy principles, those convictions necessarily stand affirmed. *See Mauldin v. Lowery,* 127 Colo. 234, 255 P.2d 976 (1953) (failure to present supporting facts and authority requires affirmance of judgment).

The judgment is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.