The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Andrew Gabriel FUENTES,
Defendant–Appellant.

No. 07CA1877.

Colorado Court of Appeals,
Div. I.

Jan. 20, 2011.

John W. Suthers, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

The main issue in this criminal case is whether defendant, Andrew Gabriel Fuentes, can be convicted of two counts of first degree burglary when he committed only one unlawful entry but assaulted two people. Because we conclude that burglary is an offense against property and that the General Assembly intended the additional element of assault in the first degree burglary statute to modify and aggravate the crime of burglary

and not to change the gravamen of it, we vacate defendant's conviction for one count of first degree burglary and remand for correction of the mittimus. We affirm defendant's convictions for the remaining count of first degree burglary and for third degree assault.

## I. Background

C.M. and her daughter, N.M., were at their home one evening entertaining friends and family. In the early morning hours, defendant and another man, Jesus Sierra, forced their way into the home through the front door and began swinging their fists. After one of the guests in the home managed to push the men outside, the fight continued in the street in front of the home. The fight involved, on one side, a group consisting of C.M., N.M., and some of their guests, and, on the other side, a group consisting of defendant, Sierra, and four others. Defendant's group had arrived together in a van, which was parked on the street opposite the home.

N.M. testified that, during the fighting, defendant kicked and hit her. Testimony also indicated that Sierra hit C.M. in the head with a metal car jack, rendering her unconscious. Both incidents occurred in the street between the home and the van. After a guest of the victims stabbed both defendant and Sierra with kitchen knives, defendant's group fled in the van.

The prosecution charged defendant with two counts of first degree burglary and one count of assault. Before trial, the prosecution moved to continue the trial date because of a delay in obtaining some evidence. At a hearing where defendant was not present, defendant's attorney agreed to continue the trial to a later date, which was still within the speedy trial period.

At trial, the prosecution urged the jury to find defendant guilty of the first count of burglary based on his assault on N.M. and the second count of burglary based on Sierra's assault on C.M. The jury verdict forms indicated that the first charge of burglary was "as to N.[M.]" and the second charge was "as to C.[M.]" The assault charge was "as to N.[M.]" Defendant was convicted of all charges. This appeal followed.

## II. Double Jeopardy and Merger

Defendant contends that double jeopardy principles preclude the two convictions for first degree burglary. More specifically, he contends that when a person unlawfully enters a building or occupied structure only once but assaults multiple people, he commits only one first degree burglary offense. He also contends that his conviction for third degree assault must merge into a single conviction for first degree burglary because, under section 18–1–408, C.R.S.2010, assault as charged and tried here is a lesser included offense of burglary. The People respond that *People v. Borghesi,* 66 P.3d 93 (Colo. 2003), disposes of defendant's contention because that case rejected the same argument in the context of Colorado's robbery statute, and they concede defendant's assertion that the third degree assault conviction merges into the burglary conviction as to N.M.

Applying the principles enunciated in *Borghesi,* we conclude that burglary is an offense against property and that the General Assembly intended the additional element of assault in the first degree burglary statute to modify and aggravate the offense of burglary and not to change the gravamen of the crime. We therefore must vacate one of defendant's first degree burglary convictions. Because we vacate the burglary conviction as to victim N.M., we further conclude that defendant's conviction for third degree assault as to N.M. is not a lesser included offense and thus does not merge. Accordingly, we decline to accept the People's concession of merger as to the assault conviction. *See People v. Nave,* 689 P.2d 645, 647 (Colo.App. 1984) (appellate court may decline to accept a concession of error).

### A. Standard of Review

■ Error resulting in a double jeopardy violation implicates a fundamental right, is obvious, and affects the fairness and integrity of the proceedings. *See People v. Herron,* 251 P.3d 1190, 1193 (Colo.App.2010). We accordingly will review defendant's unpreserved double jeopardy challenge for plain error. *See People v. Olson,* 921 P.2d 51, 53 (Colo.App.1996). To constitute plain error,

the error must so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

### B. Law

Under the Double Jeopardy Clauses of both the United States and Colorado Constitutions, a person may not be put in jeopardy twice for the same offense, U.S. Const. amend. V; Colo. Const. art. II, § 18, and may not receive multiple punishments for the same offense. *See Woellhaf v. People,* 105 P.3d 209, 214 (Colo.2005). Here, we must determine whether defendant's assault on two people in the course of a single unlawful entry of an occupied structure constitutes the same offense or multiple offenses under the first degree burglary statute. *See Borghesi,* 66 P.3d at 98.

The first degree burglary statute provides: A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person, or the person or another participant is armed with explosives or a deadly weapon.

§ 18–4–202(1), C.R.S.2010.

### C. Application

To determine whether defendant has committed one offense or multiple offenses, we must determine whether Colorado's first degree burglary statute is primarily intended to protect property interests or persons. *See Borghesi,* 66 P.3d at 98. Because the General Assembly establishes and defines criminal offenses, we turn first to an examination of Colorado's burglary statutes.

Second degree burglary is committed when a person "knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18–4–203(1), C.R.S.2010. First degree burglary encompasses these same elements but adds certain aggravating circumstances that constitute additional elements. *See Armintrout v. People,* 864 P.2d 576, 581 (Colo.1993) (second degree burglary is a lesser included offense of first degree burglary); *People v. Bielecki,* 964 P.2d 598, 608 (Colo. App.1998) (same).

 At its core, burglary is a form of trespass that is coupled with the intent to commit a crime in a building. The intent to commit a crime must be present at the very moment that the person trespasses. *Cooper v. People,* 973 P.2d 1234, 1240 (Colo.1999), *overruled on other grounds by Griego v. People,* 19 P.3d 1, 8 (Colo.2001). Moreover, the trespasser is guilty of burglary even if the trespasser does not commit the intended crime. *People v. Lucas,* 232 P.3d 155, 167 (Colo.App.2009) (citing *People v. Gill,* 180 Colo. 382, 385, 506 P.2d 134, 136 (1973)). If the trespass is based on unlawful entry, the crime therefore turns not on the commission of other acts once inside, but on the person's entry with the requisite intent at the time of that entry. *Cf. People v. Ramirez,* 18 P.3d 822 (Colo.App.2000) (trespass based on unlawfully remaining in structure). Hence, it appears from the plain language of our statutes that burglary in Colorado primarily concerns the protection of property rights. *See People v. Moore,* 841 P.2d 320, 322–23 (Colo. App.1992) (burglary is, by nature, a crime against possession and ownership).

The People nevertheless contend that because burglary is distinguished from other forms of trespass by the intent to commit a crime in a building, burglary is primarily intended to protect persons who might occupy the building. We disagree.

Under the common law, burglary was defined as breaking and entering the dwelling house of another at night with the intent to commit a felony therein. *See Cooper,* 973 P.2d at 1237–38. The *Cooper* court noted that burglary arose as a crime distinct from trespass because it was particularly "egregious and dangerous." *Id.* Its purpose was to deter trespass "against habitations," as

opposed to mere property interests. *Id.* Burglary thus evolved in part because of a concern for the safety of the occupants in a home. Common law burglary, therefore, could be understood to be primarily concerned with protecting persons as opposed to property interests.

The definition of burglary in Colorado, however, does not reflect these same concerns. Colorado has never limited burglary offenses to those committed against a dwelling. *Id.* at 1238. Beginning in 1861, burglary in Colorado included trespasses against a list of structures, including churches, saloons, and railroad cars. *Id.* This distinction led the supreme court to declare that burglary is "an offense against property and not merely against the habitation." *Sloan v. People*, 65 Colo. 456, 457, 176 P. 481, 482 (1918). In fact, the supreme court has recognized that common law burglary has "few elements in common" with burglary under Colorado's statutes. *Tollifson v. People*, 49 Colo. 219, 224, 112 P. 794, 796 (1910).

■ Since that time, the General Assembly has further broadened burglary offenses to include entry into "any building or occupied structure." *Cooper*, 973 P.2d at 1238. Moreover, any crime, not just assaultive crimes, may be intended by the person convicted of burglary. *See, e.g., Auman v. People*, 109 P.3d 647, 650–51 (Colo.2005) (intended crime was theft). For example, in Colorado a person could commit second degree burglary by unlawfully entering an empty building with only the intent to commit theft. Such circumstances pose no significant danger to any person.

■ The People alternatively contend that even if second degree burglary is primarily intended to protect property interests, first degree burglary is primarily intended to protect persons because the additional elements proscribe conduct that poses great danger to others. A burglary becomes a first degree burglary where a person either assaults or menaces any person or is armed with explosives or a deadly weapon. The People urge us to conclude that these additional elements change the emphasis of the statute.

It is true that the circumstances encompassed by the additional elements involve an increased risk of harm to persons. But nothing in the first degree burglary statute puts primary emphasis on that risk. Rather, these additional elements modify and aggravate the principal crime of burglary; they do not change the gravamen of the crime.

The People nevertheless contend that the *Borghesi* court's reasoning requires us to conclude that burglary is primarily intended to protect persons. In *Borghesi*, the defendant was convicted of two counts of robbery for taking money from a cash register that was being counted by two employees of a store. 66 P.3d at 95. The court acknowledged that the crime of robbery involved both larcenous and assaultive elements. *Id.* at 99. It held that because Colorado robbery statutes, and cases interpreting them, reflect "the common law emphasis on the assaultive nature of the crime," they are primarily intended to protect persons, not property. *Id.* at 101 (analyzing §§ 18–4–301, 18–3–402, C.R.S.2010). Therefore, it concluded that the taking of commonly owned property from multiple victims could support multiple convictions for robbery. *Id.* at 95.

Colorado burglary statutes, however, reflect no such emphasis. As discussed above, the second degree burglary statute does not contain an assaultive element. As to first degree burglary, although an assaultive element exists, nothing in the statute or case law puts primary emphasis on that element. The first degree burglary statute merely adds an assaultive element as one of four alternative circumstances that modify and aggravate the crime of burglary.

Moreover, the robbery statute analyzed in *Borghesi*, on the one hand, required a taking of property "from the person or presence of another." *Id.* at 98, 103. The first degree burglary statute, on the other hand, does not require that any person be present when a trespass occurs. To the contrary, a perpetrator could be convicted of first degree burglary if he or she unlawfully entered an *empty* building with the requisite intent and later assaulted a passerby while fleeing. The danger to others involved in a first degree burglary offense is more remote than the

danger involved in a robbery under the Colorado statutes. The first degree burglary statute is therefore primarily intended to protect property interests, not persons.

Other states with statutes similar to Colorado's first degree burglary statute have also concluded that when a person enters only once, but commits multiple assaults, the perpetrator can be convicted of only one burglary charge. *See Gorham v. State,* 968 So.2d 717, 718 (Fla.Dist.Ct.App.2007); *Commonwealth v. Gordon,* 42 Mass.App.Ct. 601, 678 N.E.2d 1341, 1344 (1997); *State v. DeWitt,* 324 Mont. 39, 101 P.3d 277, 285 (2004); *People v. Griswold,* 174 A.D.2d 1038, 572 N.Y.S.2d 202, 202–03 (N.Y.App.Div.1991); *State v. Marriott,* 2010–Ohio–3115, 189 Ohio App.3d 98, 937 N.E.2d 614, at ¶ 38 (2010); *State v. Brooks,* 113 Wash.App. 397, 53 P.3d 1048, 1050 (2002).

Massachusetts criminal statutes, for example, contain an aggravated form of burglary, which requires that a person assault another person in a dwelling after breaking and entering with the requisite intent. *Gordon,* 678 N.E.2d at 1343 (analyzing Mass. Gen. Laws ch. 266, § 14). The *Gordon* court held that burglary is "essentially a crime against a person's possessory interest in his dwelling." *Id.* at 1344 (quoting Nolan & Henry, *Criminal Law* § 404 (2d ed. 1988)). It noted that Massachusetts's robbery statutes emphasized the assault aspect over the larceny aspect of that crime, and thus multiple convictions for robbery were appropriate if there were multiple victims. *Id.* at 1343. Nevertheless, it held that no such emphasis existed in its burglary statutes. *Id.* at 1344. The court therefore concluded that where a person enters only once, but assaults multiple people, only one conviction for burglary may stand. *Id.; see also Brooks,* 53 P.3d at 1050 (holding that one entry can support only one conviction for burglary and distinguishing precedent holding that robbery of multiple victims supports multiple convictions).

Montana criminal statutes also contain an aggravated form of burglary, which requires for conviction that a person inflict bodily injury upon anyone while unlawfully entering a building with the requisite intent. *DeWitt,* 101 P.3d at 284–85 (analyzing Mont.Code Ann. § 45–6–204(2)). The *DeWitt* court concluded that the gravamen of that crime is the entry, not the assault. *Id.* It also noted that the state could have charged the defendant with one count of burglary and multiple counts of assault, but chose not to do so. *Id.* It therefore concluded that the inclusion of an assault element was meant to aggravate the burglary crime, not change burglary's emphasis to the assaultive aspect of the crime. *See id.*

Our first degree burglary statute is no different. The statute does not emphasize the assaultive element over the trespass. Hence, the gravamen of our burglary offenses is the unlawful entry. Also, the prosecution is free to charge multiple counts of assault in addition to a single count of first degree burglary.

Finally, the People urge us to rely on language found in *People v. Montanez,* 944 P.2d 529, 532 (Colo.App.1996), *rev'd on other grounds,* 966 P.2d 1035 (Colo.1998), which appears to indicate that the existence of multiple assaults could support separate charges of first degree burglary. But the *Montanez* opinion is inapposite because the defendant in that case did not assert a double jeopardy violation. *Montanez,* 944 P.2d at 532. Rather, the division addressed the question of whether the trial court was required to impose concurrent sentences under section 18–1–408(3), C.R.S.2010. *Id.* When it indicated that there were multiple victims of first degree burglary in the case, it was referring to the portion of the statute that would allow consecutive sentences where the crimes "involved" multiple victims. *Id.* This statute contains a standard that is different from the double jeopardy question raised in this case. Moreover, because the division ultimately concluded that the trial court imposed concurrent sentences, its discussion of the multiple victim requirement was dictum. *Id.*

Based on an examination of our burglary statutes in light of case law and the common law formulation of the crime, we conclude that a single entry can support only one conviction of first degree burglary, even if multiple assaults occur. We must therefore vacate one of defendant's convictions for first degree burglary.

### D. Maximizing Convictions and Sentences

█ In deciding which conviction to retain, a court should enter as many convictions and impose as many sentences as are legally possible so as to fully effectuate the jury's verdict. *People v. Glover*, 893 P.2d 1311, 1314–15 (Colo.1995); *Ramirez*, 18 P.3d at 831.

█ Here, defendant was convicted of one count of first degree burglary premised on the assault on N.M., and one count of first degree burglary premised on the assault on C.M. Defendant was also convicted of third degree assault as to N.M. If we vacate the burglary conviction as to C.M., because the assault conviction as to N.M. would be a lesser included offense of the first degree burglary conviction and would therefore merge with the burglary conviction as to N.M., *see Ramirez*, 18 P.3d at 830; *Bielecki*, 964 P.2d at 608, we would be vacating two convictions and their corresponding sentences. If, however, we vacate the first degree burglary conviction as to N.M., that would allow the assault conviction as to N.M. to stand and would require vacating only one conviction. Accordingly, because we must maximize the effect of the jury's verdict and retain the greatest number of convictions and longest sentence, we vacate defendant's conviction for the first degree burglary charge as to N.M. and retain the remaining two convictions.

Having done so, we reject defendant's contention that, under section 18–1–408, his assault conviction upon N.M. must merge with his conviction for first degree burglary as to N.M. Although the third degree assault charged and tried here is a lesser included offense of first degree burglary, nevertheless, because we have vacated the conviction for first degree burglary as to N.M., there is no greater offense with which the assault conviction may merge. For the same reasons, we reject the People's concession that the assault conviction merges with the first degree burglary conviction. *See Nave*, 689 P.2d at 647.

### III. Immediate Flight

Defendant contends that the evidence is insufficient to support the jury's verdict convicting him of first degree burglary as to C.M. and N.M. Specifically, he contends that there is insufficient evidence that the assault upon them occurred in the "immediate flight" from the home. Having vacated the burglary conviction as to N.M., this contention is moot as to that conviction. And we disagree that the evidence is insufficient to support defendant's conviction as to C.M.

### A. Standard of Review

We review a sufficiency of the evidence claim de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005).

### B. Law

A challenge to the sufficiency of the evidence requires the reviewing court to determine whether the evidence, when viewed in the light most favorable to the prosecution, is both substantial and sufficient to support the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Duncan*, 109 P.3d 1044, 1045–46 (Colo.App.2004). Furthermore, the resolution of inconsistent testimony and determination of the credibility of the witnesses are solely within the province of the jury. *Id.*

First degree burglary requires, as pertinent here, that the defendant assault a person "in effecting entry or while in the building or occupied structure or in immediate flight therefrom." § 18–4–202(1). It is undisputed that the assault occurred outside C.M.'s home after defendant's group left the residence. Accordingly, we must determine whether the evidence is sufficient to prove that the assault occurred in "the immediate flight therefrom."

The statute does not define "immediate flight." However, we conclude that the immediate flight provision of the felony murder statute is analogous. *See* § 18–3–102(1)(b), C.R.S.2010. That statute provides that a person commits felony murder when anyone causes a death "in the course of . . . immediate flight" from certain crimes. *Id.*

The supreme court has held that the plain language of the immediate flight provision of the felony murder statute reveals four limitations on criminal liability. *Auman*, 109 P.3d at 656. First, the flight must be "immediate," which requires that the felony, the flight, and the death be close in time. *Id.* Second, the word "flight" limits liability to deaths that occur while a felon is escaping, running away, or fleeing from a felony. *Id.* Third, the death must occur "in the course of" immediate flight, which the *Auman* court understood to mean "during" the flight. *Id.* Fourth, the flight must be from the felony, not some other episode or event. *Id.*

The *Auman* court also recognized that the concept of immediate flight is broad. *Id.* at 657. Liability does not terminate where intervening events interrupt flight. *Id.* For example, the *Auman* court cited to *People v. McCrary*, 190 Colo. 538, 553, 549 P.2d 1320, 1332 (1976), in which a flight that was interrupted when felons stopped at a bar for up to a half hour was nevertheless held to support liability under the felony murder statute. *Id.* Thus, the concept of immediate flight encompasses all of a person's actions that constitute "one continuous integrated attempt to successfully complete his crime and escape detention." *McCrary*, 190 Colo. at 553, 549 P.2d at 1332.

Although the first degree burglary statute does not use the phrase "in the course of," but instead uses the word "in," we perceive no meaningful difference between the two requirements. *See Auman*, 109 P.3d at 661 (holding that the term "in" has a meaning nearly identical to the phrase "in the course of"). We therefore hold that the immediate flight standard of the first degree burglary statute requires that the entry, the assault, and the flight be close in time and that the assault occur while fleeing from the building or occupied structure. A person therefore commits an assault in immediate flight from a building where the assault is part of a continuous integrated attempt to get away from the building.

### C. Application

Defendant contends that there was no evidence at trial to support the jury's verdict because the assault in the street could not have occurred in the immediate flight from the home. We disagree.

The evidence at trial revealed that the assault on C.M. occurred shortly after the entry and before defendant's group drove away in the van. The jury therefore could have found that the flight was immediate. Also, the assault occurred in the street between the home and the van; hence, the jury could have found that it occurred while defendant was fleeing from the home.

Defendant nevertheless contends that the flight had ended before the assault because some evidence indicated that a break in the fighting had occurred. However, the jury was not required to believe this evidence, and the determination of credibility of witnesses is solely within the province of the jury. Moreover, even if the jury believed that a break in the fighting had occurred, it still could have found that the assault occurred in immediate flight from the home because the concept of immediate flight is broad enough to encompass acts performed after intervening events temporarily interrupt flight.

Accordingly, we conclude that the evidence was sufficient to support defendant's conviction for first degree burglary as to C.M.

### IV. Defendant's Absence at Hearing

Defendant contends that the trial court violated his right to be present when it ruled on the prosecution's motion to continue his trial in his absence. We disagree.

### A. Standard of Review

Assuming, without deciding, that defendant need not have objected in the trial court to properly preserve this contention, *see People v. Ragusa*, 220 P.3d 1002, 1009 (Colo.App. 2009) (applying harmless error analysis without discussing whether defendant preserved her claim that the trial court had violated her right to be present at her trial); *but see People v. Dunlap*, 124 P.3d 780, 819 (Colo. App.2004) (defendant waived his right to be present at the initial jury orientation session because he failed to object when counsel proposed his absence), we will apply harmless error analysis.

An error is harmless whenever there is no reasonable probability that it contributed to the defendant's conviction. *Crider v. People,* 186 P.3d 39, 42 (Colo.2008); *People v. Garcia,* 28 P.3d 340, 344 (Colo. 2001). If the error amounts to a constitutional violation, or is of constitutional dimension, however, before disregarding it as harmless, a reviewing court must be convinced beyond a reasonable doubt of its lack of prejudicial impact. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### B. Law

A defendant has a right to be present at every critical stage of a criminal trial. *Ragusa,* 220 P.3d at 1009; *see also Luu v. People,* 841 P.2d 271, 275 (Colo.1992). Due process, however, does not require a defendant's presence "when it would be useless or only slightly beneficial." *People v. Isom,* 140 P.3d 100, 104 (Colo.App.2005).

### C. Application

Defendant contends that, if he had been present at the hearing, he could have objected to the court's order continuing the trial. But he fails to state any basis for his objection or any reason that such an objection should have been granted. Moreover, his new trial date was within the speedy trial period. We accordingly perceive no error, let alone constitutional error, that substantially influenced the verdict or affected the fairness of the trial proceedings.

The judgments of conviction for first degree burglary as to C.M. and for assault as to N.M. are affirmed. The judgment of conviction for first degree burglary as to N.M. is vacated, and the case is remanded for correction of the mittimus.

Judge TAUBMAN and Judge BERNARD concur.