21CA1333 Peo in Interest of Houle 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA1333 Jefferson County District Court No. 20MH69 Honorable Meegan A. Miloud, Magistrate The People of the State of Colorado, Petitioner-Appellee, In the Interest of Stephany Houle, a/k/a Angelica Penny Royal, Respondent-Appellant. ORDER REVERSED Division IV Opinion by JUDGE FREYRE J. Jones and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Kimberly S. Sorrells, County Attorney, Joan S. Heller, Assistant County Attorney, Golden, Colorado, for Petitioner-Appellee The Law Firm of John L. Rice, John L. Rice, Pueblo, Colorado, for Respondent-
Appellant 
1 ¶ 1 Respondent, Stephany Houle, a/k/a Angelica Penny Royal,
1 appeals the district court’s order authorizing the involuntary administration of (1) the antipsychotic medications Clozaril and Zyprexa; (2) the anti-anxiety medication Ativan; (3) the mood stabilizers lithium and Depakote; and (4) the side effect medications Inderal and Benadryl.
2 We reverse the order authorizing the involuntary administration of these medications. I. Background ¶ 2 In February 2021, Ms. Penny Royal was admitted to the Colorado Mental Health Institute at Fort Logan (CMHI-FL). Dr. Ryan Moroze, a staff psychiatrist at CMHI-FL, began treating Ms. Penny Royal shortly thereafter, and in July, the People petitioned for an order authorizing the involuntary administration of antipsychotic, anti-anxiety, mood stabilizing, and side effect medications. 1 The respondent testified that her full name is Angelica Penny-
Romanoff-Royal-Rafael. Because she does not identify as Stephany Houle and she has declined to complete paperwork using her legal name, we identify the respondent as Ms. Penny Royal in this opinion. This is also consistent with the parties’ briefs. 2 Ms. Penny Royal does not appeal the portion of the district court’s order extending certification for short-term treatment. 
2 ¶ 3 The district court held an evidentiary hearing at which Dr. Moroze and Ms. Penny Royal testified. Dr. Moroze was qualified and accepted as an expert witness in the field of psychiatric medication by stipulation. At the time of the hearing, Ms. Penny Royal agreed to take nine of the requested medications, but she objected to Clozaril, Zyprexa, Ativan, lithium, Depakote, Inderal, and Benadryl. ¶ 4 Dr. Moroze testified that Ms. Penny Royal suffers from Bipolar I disorder, current episode manic, with psychotic features. Ms. Penny Royal’s symptoms include difficulty sleeping, distractibility, pressured speech, mood dysregulation, occasional aggressive behavior, grandiose and paranoid delusions, and auditory hallucinations. ¶ 5 Dr. Moroze said that while some of Ms. Penny Royal’s symptoms have modestly improved under the voluntary medication regimen, many persist, and the medications she currently takes have provided limited benefit or are not available in a therapeutic dose sufficient to promote her discharge. He characterized her as “stably unwell,” said she remains gravely disabled, and opined that 
3 without the involuntary medications, her prognosis is very poor because she would likely be subject to a long-term hospital stay. ¶ 6 Additionally, Dr. Moroze explained that if Ms. Penny Royal is released without the involuntary medications, she will likely be re-
hospitalized as has happened several times previously. He noted that her previous failures to medicate while in the community resulted in lengthier hospitalizations to stabilize her and said that the longer her delusions persist, the more difficult it becomes to obtain a positive outcome. Dr. Moroze also testified that he has no records of Ms. Penny Royal’s claimed side effects to the involuntary medications. Even so, he articulated an existing plan to mitigate and monitor potential known side effects. ¶ 7 For her part, Ms. Penny Royal denied being “very sick,” as Dr. Moroze described. She believes her symptoms stem from “menstrual dysphoria.” She said that she has numerous side effects from the involuntary medications including dental issues, mucus in her lungs, excessive drowsiness, seizures, hives, and nightmares based on her grandpa’s death. ¶ 8 At the end of the hearing, the district court found Dr. Moroze both credible and persuasive. As relevant here, it found, by clear 
4 and convincing evidence, that Ms. Penny Royal suffers from a mental illness and is not competent to effectively participate in treatment decisions. It concluded that treatment is necessary to prevent significant and long-term deterioration of Ms. Penny Royal’s condition and that Ms. Penny Royal’s reported side effects can be managed by CMHI-FL’s medical staff. Finally, the court found the need for treatment is sufficiently compelling and overrides any legitimate interest Ms. Penny Royal has in refusing the medications. And it found that a less intrusive treatment alternative is not available. The court granted the petition and entered an order authorizing the involuntary administration of Clozaril, Zyprexa, Ativan, lithium, Depakote, Inderal, and Benadryl. Ms. Penny Royal challenges the sufficiency of the evidence supporting the court’s order. II. Legal Authority and Standard of Review ¶ 9 An involuntarily committed person retains the right to refuse treatment. See People v. Medina, 705 P.2d 961, 971 (Colo. 1985). Even so, a district court may authorize the involuntary administration of medication to a patient if the People establish each of the following elements by clear and convincing evidence: (1) 
5 the patient is incompetent to effectively participate in the treatment decision; (2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient’s mental condition or to prevent the likelihood of the patient’s causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient’s need for treatment by antipsychotic medication is sufficiently compelling to override the patient’s bona fide and legitimate interest in refusing treatment. Id. at 973; People in Interest of Strodtman, 293 P.3d 123, 131 (Colo. App. 2011). A physician’s testimony alone may constitute clear and convincing evidence sufficient to sustain an involuntary medication order. See People v. Pflugbeil, 834 P.2d 843, 846-47 (Colo. App. 1992). ¶ 10 When, as here, a patient challenges the sufficiency of the evidence supporting the district court’s findings on any of these elements, we review the court’s conclusions of law de novo and defer to its findings of fact if supported by record evidence. People v. Marquardt, 2016 CO 4, ¶ 8. We view the record in the light most favorable to the People, leaving the resolution of conflicts in the testimony and determination of the credibility of the witnesses 
6 solely to the province of the fact finder. People v. Fuentes, 258 P.3d 320, 326 (Colo. App. 2011). III. Analysis ¶ 11 Ms. Penny Royal challenges the sufficiency of the evidence for the second and third Medina factors. Concerning factor two, she argues that the evidence does not support the district court’s findings that involuntary medication is necessary to prevent a significant and long-term deterioration in her mental condition. Because we agree with this contention, we need not address her arguments concerning factor three. ¶ 12 The second Medina factor requires the court to consider one of two alternative factors: if the proposed treatment is necessary either (1) “to prevent a significant and likely long-term deterioration in the patient’s mental condition” or (2) “to prevent the likelihood of the patient’s causing serious harm to himself or others in the institution.” 705 P.2d at 973. Here, the district court based its order on the deterioration alternative. This alternative considers “the patient’s actual need for the medication.” Id. Medina directs courts to consider “the nature and gravity of the patient’s illness, the extent to which the medication is essential to effective 
7 treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication.” Id. But, as our supreme court explained in Marquardt, ¶ 23, these considerations must all be viewed through the lens of preventing deterioration, rather than attaining improvement, of a respondent’s condition. The deterioration factor cannot be met simply with evidence that medication would have a positive impact on the patient’s condition and potentially lead to a patient’s release from confinement. Id. at ¶¶ 25-26. ¶ 13 The district court found that the requested medications “are necessary to prevent a significant and likely long-term deterioration” in Ms. Penny Royal’s mental condition. It considered the holding in Marquardt, but it distinguished this case by finding that Ms. Penny Royal was unstable. The record, however, does not support the district court’s finding on this issue. ¶ 14 While Dr. Moroze’s petition stated that involuntary medications were necessary to “prevent further psychiatric decompensation,” his testimony never connected the requested medications to the prevention of Ms. Penny Royal’s long-term 
8 deterioration. Indeed, when asked on cross-examination whether Ms. Penny Royal’s current medical condition was deteriorating, Dr. Moroze stated, “It is not deteriorating from that point; however, it’s not improving where she has that.” (Emphasis added.) ¶ 15 Nor does the evidence demonstrate that Ms. Penny Royal’s condition was deteriorating. Dr. Moroze testified that Ms. Penny Royal was tolerating the voluntary medications well and that she had experienced modest improvement under the current medication regimen. When Ms. Penny Royal was transferred to CMHI-FL, “she used fewer racial slurs, her speech ha[d] been slightly less pressured and more interruptible, and she . . . needed less redirection from staff in order to follow the policies and procedures.” She also needed less supervision when completing hygiene activities. Although she continues to suffer delusions and is unable to connect the need for medication to her mental illness, Dr. Moroze testified that Ms. Penny Royal is “stably unwell.” In light of this testimony, Ms. Penny Royal’s history of mental illness alone is not enough to support the district court’s finding that she is unstable. See id. at ¶ 21 (“A patient’s history of mental illness is insufficient 
9 to support an assumption that his condition will deteriorate further when he is, in fact, stable.”). ¶ 16 As in Marquardt, the record here does not show a significant risk that Ms. Penny Royal’s condition would deteriorate without the requested medication, but instead shows that Ms. Penny Royal would not improve to the point of justifying discharge. Dr. Moroze testified that the involuntary medications are necessary to improve Ms. Penny Royal’s mental condition and to promote her discharge. In particular, he prescribed Clozaril and Zyprexa (antipsychotics) because Loxitane does not provide “a significant benefit in terms of promoting her discharge and alleviating symptoms.” He also prescribed Depakote because Ms. Penny Royal had been previously discharged while taking Depakote in combination with Zyprexa. ¶ 17 Additionally, Ms. Penny Royal agreed to take and was taking the mood stabilizers Lamictal and Trileptal. Dr. Moroze requested lithium and Depakote because the Lamictal and Trileptal are “not enough to affect in terms of decreasing her mood dysregulation and alleviating manic symptoms.” (Emphasis added.) Finally, although Ms. Penny Royal agreed to take and was taking Clorazepam (Klonopin), a benzodiazepine antianxiety medication similar to 
10 Ativan, Dr. Moroze requested Ativan because it is available in a shorter acting, injectable form that can be administered if Ms. Penny Royal refuses to take Clorazepam or “in an emergent period of mood dysregulation or aggressive behavior, which she has demonstrated in the past.” Overall, Dr. Moroze opined that Ms. Penny Royal’s prognosis in the absence of the involuntary medications was “very poor” because, without significant improvement in her delusions and symptoms, Ms. Penny Royal would “likely be relegated to a longer stay at the hospital.” ¶ 18 The district court was “pleased to hear that there ha[d] been some improvement,” but it ordered the involuntary medication “to make sure [Ms. Penny Royal] can be healthy enough to discharge.” However, the court does not have the authority “to order medication solely to improve or expedite a patient’s participation in treatment or likelihood of release.” People in Interest of Marquardt, 2014 COA 57, ¶ 20, aff’d, 2016 CO 4. And, “[f]orcing patients to accept medication based on an abstract, future possibility would render their right to bodily integrity illusory,” even where the patient has a history of violent actions. Marquardt, 2016 CO 4, ¶¶ 19, 21. Because insufficient evidence supports the involuntary 
11 administration of Depakote and lithium, insufficient evidence necessarily exists to support the involuntary administration of Inderal and Benadryl, medications designed to counteract the side effects of Depakote and lithium. ¶ 19 We conclude that the district court applied an incorrect legal standard and, therefore, erred by ordering the involuntary administration of medication to Ms. Penny Royal. See id. at ¶¶ 25-
26. IV. Conclusion ¶ 20 The district court’s order authorizing the involuntary administration of Clozaril, Zyprexa, Ativan, lithium, Depakote, Inderal, and Benadryl is reversed. JUDGE J. JONES and JUDGE TOW concur.