24CA0911 Peo in Interest of Parrett 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0911 Pueblo County District Court No. 24MH30023 Honorable Timothy O’Shea, Judge The People of the State of Colorado, Petitioner-Appellee, In the Interest of Bradley Kenneth Parrett, Respondent-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE SCHUTZ Freyre and Lipinsky, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant 
1 ¶ 1 Respondent, Bradley Kenneth Parrett, appeals the district court’s order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to involuntarily administer medication. We affirm. I. Background ¶ 2 Parrett was committed to CMHHIP for competency restoration in a criminal case. When Parrett arrived at CMHHIP in November 2023, he was irritable, exhibited thought blocking and disorganized thinking, and expressed paranoid delusions. Over time, Parrett’s condition deteriorated, and he became physically aggressive. His physical aggression progressed over time: (1) on March 15, without provocation, he pushed a peer from behind; (2) on April 8, he made threatening statements to staff; and (3) on April 24, he hit a peer with his fists. The medical staff started him on emergency medication after the last incident. ¶ 3 Dr. Paul Mattox, a staff psychiatrist at CMHHIP and Parrett’s attending psychiatrist, diagnosed Parrett with schizophrenia and sought to treat him with Olanzapine (Zyprexa), but Parrett refused to take this medication voluntarily. On May 7, 2024, the People 
2 filed a motion seeking a court order to authorize the involuntary administration of the medication. ¶ 4 The district court held a hearing on May 13, 2024. Dr. Mattox testified for the People and Parrett testified on his own behalf. At the end of the hearing, the court concluded that the People had proved all four elements set forth in People v. Medina, 705 P.2d 961 (Colo. 1985), and issued an order allowing CMHHIP staff to administer the requested medication to Parrett against his will. II. Discussion ¶ 5 Parrett contends that the evidence presented to the district court was insufficient to support the involuntary medication order. While he concedes that sufficient evidence supports the first, second, and third Medina factors, he asserts there was insufficient evidence to establish the fourth factor. We are not persuaded. A. Applicable Law and Standard of Review ¶ 6 An involuntarily committed or legally incompetent person retains the right to refuse treatment. Id. at 971. But a district court may order that a patient be involuntarily administered medications if the People prove, by clear and convincing evidence, the four factors outlined in Medina: 
3 (1) the patient is incompetent to effectively participate in the treatment decision; (2) treatment by antipsychotic and other medications is necessary to prevent a significant and likely long-term deterioration in the patient’s mental condition, or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient’s need for treatment by antipsychotic and other medications is sufficiently compelling to override any bona fide and legitimate interest he or she has in refusing treatment. Id. at 973. ¶ 7 The State must prove each Medina factor by clear and convincing evidence. People in Interest of R.K.L., 2016 COA 84, ¶ 30. A treating physician’s testimony may be sufficient to satisfy the State’s burden of proof. See People v. Pflugbeil, 834 P.2d 843, 847 (Colo. App. 1992). ¶ 8 Where, as here, a patient challenges the sufficiency of the evidence supporting the district court’s finding on any of these elements, we review the court’s conclusions of law de novo and defer to its factual findings if supported by the evidence. People v. Marquardt, 2016 CO 4, ¶ 8. We view the evidence as a whole and in 
4 the light most favorable to the People, leaving the resolution of conflicts in the testimony and determinations of witness credibility solely to the fact finder. People v. Fuentes, 258 P.3d 320, 326 (Colo. App. 2011). Where “ample evidence in the record . . . support[s] the trial court’s findings and conclusion[s], based on clear and convincing evidence,” we may not “substitute[] [our] judgment for that of the trial court.” People in Interest of A.J.L., 243 P.3d 244, 255 (Colo. 2010). B. Analysis ¶ 9 To satisfy the fourth Medina factor, a court must determine whether the patient’s refusal is bona fide and legitimate. Medina, 705 P.2d at 974. If so, the court must then determine “whether the prognosis without treatment is so unfavorable that the patient’s personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution.” Id. ¶ 10 The district court found that Parrett had a bona fide and legitimate interest in refusing treatment based on his religion (which prohibits him from taking pharmaceuticals because they are considered poison) and his preference for natural medications. 
5 However, the court also found that Parrett’s “prognosis [was] so unfavorable that his bona fide and legitimate interest for refusing medication must yield to the legitimate interest the State has in preserving his life and health and protecting [the] safety of those in the institution.” The record supports these findings. ¶ 11 During the hearing, Parrett’s attorney asked him, “Do you have any religious, cultural, or background beliefs that preclude you from taking pharmaceuticals or Zyprexa specifically?” Parrett responded, “I would be given the tithing as a Messianic Jew, a Jewish Christian, a Christian that there are other diasporas, scattered seeds, sections of such religion. Such teachings of which are given through holy scripture has given me means to search as for what pharmaceuticals are.” Parrett’s counsel followed up by asking, “If you would just explain how your religious belief precludes you from taking medication?” Parrett responded, I would come to search for knowledge for the correct path of which man may walk. That is where we come to believe knowledge that is given to us. And with this knowledge that is given how we come and decide to walk in the paths that we would take. 
6 On cross-examination, Parrett added that he refuses “poison, not medicine” and, according to him, Zyprexa is poison because it is a pharmaceutical. ¶ 12 Dr. Mattox testified that Zyprexa has adverse side effects, but that the failure to medicate Parrett would be more harmful than the risks that Zyprexa posed. Dr. Mattox noted his concerns (which were based on his clinical observations of Parrett) that, without Zyprexa Parrett would again deteriorate and become assaultive. He testified that, while he is aware Parrett has “made references to wanting to take something natural,” but Dr. Mattox was not “able to really understand precisely what that means or what his objections are for medications and if those objections are grounded in rational thought.” Moreover, Dr. Mattox testified that he was not aware of a natural supplement or medicine that has been shown to be effective at treating Parrett’s symptoms. And he testified that, while Parrett had not observed or reported any side effects since he started taking Zyprexa, the medical staff would continue to monitor him for side effects. 
7 ¶ 13 The district court found Dr. Mattox’s testimony credible and persuasive, and his testimony was sufficient to support the court’s findings on the fourth Medina factor. ¶ 14 Nevertheless, Parrett asserts that, because the district court was unable to ascertain the connection between Parrett’s religious beliefs and his refusal of treatment — describing his statements on the topic as “non sequiturs” — the court was unable to properly weigh them against the State’s interest in forcibly medicating him. But the district court considered Parrett’s religious views and preference for natural medications and treated them as bona fide and legitimate. Any lack of understanding on the court’s part was based on Parrett’s nonresponsive and incongruous answers to his counsel’s questions regarding the nature of his religious objections. And given this testimony, we cannot say the court erred by concluding that Parrett’s danger to himself or others outweighed his religious beliefs. See Medina, 705 P.2d at 974. (While the “patient’s refusal may stem from . . . an absolute and unequivocal religious belief or practice,” the court must nevertheless “determine whether the patient’s refusal is bona fide and legitimate” and weigh the patient’s preference with the “legitimate interests of the state in 
8 preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution.”). ¶ 15 Because the record supports the district court’s findings, we conclude that it did not err by finding that any desire Parrett might have in refusing medication was overridden by his sufficiently compelling need for treatment. See R.K.L., ¶¶ 13, 30. III. Disposition ¶ 16 The order is affirmed. JUDGE FREYRE and JUDGE LIPINSKY concur.