24CA0827 Peo in Interest of GLC 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0827 Pueblo County District Court No. 22MH343 Honorable Timothy O’Shea, Judge The People of the State of Colorado, Petitioner-Appellee, In the Interest of G.L.C., Respondent-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE LIPINSKY FREYRE and SCHUTZ, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant 
 1 ¶ 1 G.L.C. appeals the district court’s order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to involuntarily administer medication. We affirm. I. Background ¶ 2 In September 2022, G.L.C. was committed to CMHHIP for restoration to competency in a criminal case. He was diagnosed with schizoaffective disorder bipolar type, and presented symptoms such as auditory hallucinations, delusions, and significant mood shifts with manic symptoms. ¶ 3 Beginning in November 2022, G.L.C. was subject to multiple involuntary treatment orders based on his refusal to take the antipsychotic medication prescribed for him. The People’s most recent petition for review of G.L.C.’s refusal of treatment was filed on April 30, 2024. ¶ 4 The district court held an evidentiary hearing on the petition. Dr. Charles Dygert, a staff psychiatrist at CMHHIP and G.L.C.’s attending physician, testified for the People, and G.L.C. testified on his own behalf. At the end of the hearing, the court concluded that the People had proved all four elements set forth in People v. Medina, 705 P.2d 961 (Colo. 1985), and issued an order allowing 
 2 CMHHIP staff to administer the requested medications — Fanapt/iloperidone, Depakote or Depakene/valproate, Thorazine/chlopromazine, and Ativan/lorazepam — to G.L.C. against his will, and for “[l]aboratory studies (and associated blood draws) to safely and effectively utilize the [medications] [and] periodic or as medically indicated physical examination[s] by a qualified practitioner.” II. Discussion ¶ 5 G.L.C. contends that the evidence presented to the district court was insufficient to support the involuntary medication order. While he concedes that sufficient evidence supports the first, second, and third Medina factors, he asserts that insufficient evidence established the fourth factor. We are not persuaded. a. Applicable Law and Standard of Review ¶ 6 An involuntarily committed or legally incompetent person retains the right to refuse treatment. Medina, 705 P.2d at 971. But a district court may order that a patient be involuntarily administered medications if the People prove, by clear and convincing evidence, the four factors outlined in Medina: 
 3 (1) the patient is incompetent to effectively participate in the treatment decision; (2) treatment by antipsychotic and other medications is necessary to prevent a significant and likely long-term deterioration in the patient’s mental condition, or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient’s need for treatment by antipsychotic and other medications is sufficiently compelling to override any bona fide and legitimate interest he or she has in refusing treatment. Id. at 973. ¶ 7 The State must prove each Medina factor by clear and convincing evidence, People in Interest of R.K.L., 2016 COA 84, ¶ 30, 412 P.3d 827, 834, and a treating physician’s testimony may be sufficient to satisfy the State’s burden of proof, see People v. Pflugbeil, 834 P.2d 843, 847 (Colo. App. 1992). ¶ 8 Where, as here, a patient challenges the sufficiency of the evidence supporting the district court’s finding on any of these elements, we review the court’s conclusions of law de novo and defer to its finding of fact if supported by the evidence. People v. Marquardt, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We view the 
 4 evidence as a whole and in the light most favorable to the People, leaving the resolution of conflicts in the testimony and determinations of witness credibility solely to the fact finder. People v. Fuentes, 258 P.3d 320, 326 (Colo. App. 2011). Where “ample evidence in the record . . . support[s] the trial court’s findings and conclusion[s], based on clear and convincing evidence,” we may not “substitute[] [our] judgment for that of the trial court.” People in Interest of A.J.L., 243 P.3d 244, 255 (Colo. 2010). a. Analysis ¶ 9 To satisfy the fourth Medina factor, a court must determine whether the patient’s refusal is bona fide and legitimate. Medina, 705 P.2d at 974. If so, the court must then determine “whether the prognosis without treatment is so unfavorable that the patient’s personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution.” Id. ¶ 10 The district court found that G.L.C. had a bona fide and legitimate interest in refusing treatment based on his Rastafarian religious and cultural beliefs, and to avoid the side effects of the medications. However, the court also found that G.L.C.’s 
 5 “prognosis without the medication is so unfavorable that his personal preference must yield to the legitimate interest the State has in preserving his life and health and protecting the safety of those in the institutions.” The record supports these findings. ¶ 11 While Dr. Dygert testified that the medications had adverse side effects, he also testified that the failure to medicate G.L.C. would be more harmful than the risks that the medications posed, and those risks outweighed G.L.C.’s religious and cultural beliefs that preclude him from taking the medications. Dr. Dygert explained that “the intensity of [G.L.C.’s] symptoms without the medication[s] [is] so great that [the symptoms] markedly affect his functioning” and “make him a danger to others.” Moreover, Dr. Dygert testified that, while G.L.C. is already on “a low dose of medication which appears to be effective and with relatively few side effects,” Dr. Dygert would continue to monitor him for any additional potential side effects. ¶ 12 We are not persuaded by G.L.C.’s argument that, because he is not currently a management problem, it would be unreasonable to maintain the court-ordered medication in perpetuity based on the concern that he may at some point return to his previous state. 
 6 Although “the abstract possibility that a patient’s condition may deteriorate in the future is insufficient to support a Medina order,” Marquardt, ¶ 21, 364 P.3d at 504, “[i]f the patient is stable on the current dose, then adhering to that dose will not cause additional harm.” Id. at ¶ 24, 364 P.3d at 505; see also R.K.L., ¶ 43, 412 P.3d at 836-37. The requested medications (and amounts) are either the same or less than the prior order authorizing involuntary medication. ¶ 13 Prior Colorado cases have not addressed whether, in cases where the court-ordered administration of medication has stabilized the patient’s condition, the patient’s religious beliefs and practices can override the treating physician’s recommendation for continued administration of the medication. But a central tenet of Medina is that a court may order the involuntary administration of medication so long as the need for the medication “is sufficiently compelling to override any legitimate interest of the patient in refusing treatment.” Medina, 705 P.2d at 974. This principle applies where, as here, the physician testifies that the patient’s condition would likely deteriorate if the administration of the mediation was stopped. 
 7 ¶ 14 Dr. Dygert opined that G.L.C. would again become a management problem if he were to stop his current regimen of medications. Dr. Dygert explained that stopping the requested medications, or even reducing them, would result in “an increase in — in delusional thoughts, eventually a return of auditory hallucinations, and then increased agitation and threatened behavior.” He explained that, without medications or “when he’s been on an ineffective dose of those medications,” G.L.C. exhibited “a marked increase in symptoms and decrease in his ability to function on a unit, as well as increased irritability” and “a movement towards agitation and potential aggression.” The district court credited Dr. Dygert’s testimony, finding it both credible and persuasive, and we are bound by those findings. Fuentes, 258 P.3d at 326. ¶ 15 We do not doubt that G.L.C.’s concerns are bona fide and legitimate. But a patient’s religious beliefs or practices are not absolute; in cases such as this, they “must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution.” Medina, 705 P.2d at 974. 
 8 ¶ 16 Because the record supports the district court’s findings, we conclude that it did not err by finding that any desire G.L.C. might have in refusing medication was overridden by his sufficiently compelling need for treatment. See R.K.L., ¶¶ 13, 30, 412 P.3d at 832, 834. III. Disposition ¶ 17 The order is affirmed. JUDGE FREYRE and JUDGE SCHUTZ concur.